**UNITED STATES of America,**
**Plaintiff,**

v.

**LAWRENCE TOWERS, INC., et al.,**
**Defendants.**

**No. 64-C-141.**

United States District Court
E. D. New York.

Dec. 7, 1964.

---

10. Fay v. Noia, 372 U.S. 391, 448, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Joseph P. Hoey, U. S. Atty., Eastern District of New York, for plaintiff; Thomas J. Lilly, Asst. U. S. Atty., of counsel.

M. Carl Levine, Morgulas & Foreman, New York City, for defendants Atlas Tile & Marble Works, Inc., and Parkchester Glass Corp.; Edwin Efros, New York City, of counsel.

Fink, Weinberger & Levin, New York City, for defendants Capitol Mail Chute Corp. and Martin Katz Corp.; Martin S. Saiman, New York City, of counsel.

BARTELS, District Judge.

This is a motion for summary judgment pursuant to Rule 56, Fed.Rules Civ. Proc., 28 U.S.C.A., as against Parkchester Glass Corp. (Parkchester), Atlas Tile & Marble Works, Inc. (Atlas), Capitol Mail Chute Corp. (Capitol) and Martin Katz Corp. (Katz), mechanics' lien holders named as defendants in an action to foreclose a mortgage owned and held by the Federal Housing Commissioner (Commissioner). The moving papers, including the affidavits of the General Counsel for the Federal Housing Administration and Vice-President and Secretary of Lincoln Savings Bank (Bank), establish the following facts:

I

On August 9, 1962, Lawrence Towers, Inc. (Towers) executed and delivered to the Bank a note and mortgage in the sum of $2,719,800 and in conjunction therewith both parties executed on the same date a building and loan agreement. The mortgage was recorded in the office of the City Register of the City of New York, Kings County, on August 13, 1962, and the loan agreement was filed in the office of the County Clerk of said County on the same date. The loan was insured by the Commissioner pursuant to the National Housing Act (Act) and it was disbursed by the Bank between August 10, 1962 and June 28, 1963, as indicated by a transcript of account attached to the moving papers. Towers failed to make the initial installment payment, as a result of which the Bank exercised its option under its insurance agreement and assigned the note and mortgage to the Commissioner. Accordingly, an action to foreclose the mortgage was instituted on February 7, 1964.

Capitol and Katz answered by denying knowledge or information sufficient to form a belief as to the material allegations of the complaint and denying that their liens were subordinate to the lien of the mortgage. No factual issues were thus raised. According to their brief, they rely on an alleged violation of that provision of the Act, 12 U.S.C.A. § 1713, which requires that the principal of any mortgage eligible for insurance must not exceed 90% of the estimated value of the property.

Parkchester and Atlas answered by denying the validity of the note and mortgage and any knowledge or information sufficient to form a belief as to the other allegations. No factual issues were thereby presented. These defendants also set up three separate and distinct defenses, claiming, among other things, that the Commissioner and the Bank failed to comply with the terms of the building and loan agreement and that they relied upon such compliance in furnishing labor and materials to Towers and that consequently their liens were superior to the lien of the mortgage. They abandoned two of their claims and according to their brief, they now predicate their defense upon a claim that the Commissioner failed to comply with the building and loan agreement, the provisions of the Act and the regulations of the Federal Housing Administration (FHA) in that (1) when the loan was made the mortgagor did not have funds sufficient to complete the construction of the project as required by Section 207.19(c) of the FHA regulations, (2) upon completion of the project and prior to the final payment the mortgagor was not required to submit a certificate of

payment of all costs for labor and material and sub-contract work in violation of Section 207.27 of the FHA regulations, (3) the mortgage was issued in excess of 90% of the estimated value of the property in violation of 12 U.S.C.A. § 1713, and (4) the attempt of the Government to place the estimated value of the property at the replacement value of $3,024,536.40 results in a violation of Section 207.19(c) (5) (i) of the FHA regulations which requires the project bond to be not less than 10% of such estimated value.

While the Government denies any failure to comply with all the applicable statutes and regulations in insuring the mortgage loan, it is willing, for the purpose of resolving this motion, to admit that there were statutory violations as asserted by the defendants, upon the theory that such violations do not present a material issue in this foreclosure action. Under the circumstances, the issue is whether the violations claimed by the defendants are relevant to the right of the Government to foreclose and this is a legal issue and not a factual question.

## II

■ From the record it becomes clear as a matter of fact that the Bank advanced the money to the mortgagor, that the note and mortgage were executed as security therefor in conjunction with a building and loan agreement, that both were recorded before any of the defendants' liens attached to the property, that the mortgage was insured by the Commissioner, that the mortgagor defaulted and that the note and mortgage were assigned to the Government. Ordinarily there would appear little doubt from the above that the Government would have a right to foreclose the mortgage. The mechanics' lien holders assert, however, that the violations of the Act and the FHA regulations set up as a defense in some way invalidate the mortgage lien

or subordinate it to the priority of the mechanics' liens. Under Section 13, sub. (2) of the New York Lien Law, McKinney's Consol. Laws, c. 33, a building loan mortgage is specifically accorded priority over mechanics' liens with respect to advances made under the mortgage before the filing of such liens. In this case the entire amount of the loan was advanced before the liens were filed. Consequently, in order to validate the defenses to this foreclosure proceeding, the Court must resort to some novel theory not heretofore advanced in the law of mortgage foreclosure. At all events, no cases have been cited and none have been found to support defendants' position.[1]

■ We begin with the premise that the Commissioner did not make the loan but he merely insured it. He had no transactions or contacts with the mortgagor and certainly none with the mechanics' lien holders who, as far as he was concerned, were complete outsiders. There is nothing in the Act or the FHA regulations which indicates or suggests in the slightest degree that there was some duty, created by contract or otherwise, owed by the Commissioner to these defendants in insuring the loan. The legislative history of the Act does not disclose or intimate any intent on the part of Congress to benefit or protect anyone but the Government. This was emphasized in United States v. Neustadt, 1961, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614, where a purchaser of a home attempted to recover from the Government losses sustained by the payment by him of a price in excess of the fair market value of the property in reliance upon a negligently excessive FHA appraisal. In referring to the legislative history of the statute, the Court in denying recovery said:

" * * * it was repeatedly emphasized that the primary and pre-

---

1. Defendants refer to United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, and Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403, involving

the violation of the rights of individuals in immigration and loyalty proceedings arising from a breach by a Government agency of its own regulations. Obviously, these cases are inapposite.

dominant objective of the appraisal system was the 'protection of the Government and its insurance funds'; that *the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees;* and that 'there is no legal relationship between the FHA and the individual mortgagor.' Never once was it even intimated that, by an FHA appraisal, the Government would, in any sense, represent or guarantee to the purchaser that he was receiving a certain value for his money.

"Nor is there any indication that Congress intended, by its 1954 addition of § 226, *to modify the legislation's fundamental design from a system of mortgage repayment insurance to one of guaranty or warranty to the purchaser of value received.*" (p. 709, 81 S.Ct. p. 1301.) [Emphasis supplied.]

The mechanics' lien holders in this case are in no better position than the purchaser for value received. There was no warranty or guarantee running from the Government to them. There is no suggestion in the Act or the regulations that any violation thereof will result in the invalidity or subordination of the lien of the mortgage and there is no legal principle which would authorize such an interference with the mortgage lien under the circumstances.

Not only does the Act and the regulations fail to create any legal relationship based upon contract or tort between the Government and the mechanics' lien holders, but it does not create any such relationship even between the Government and the mortgagor. If the defendants are relying upon any theory of deceit or misrepresentation, their claim will be barred by the Federal Torts Claim Act which excludes all claims arising out of negligent as well as deliberate misrepresentation. See United States v. Neustadt, supra. At all events, such claims would not bar the enforcement of security rights. If, on the other hand, the defendants are relying upon some theory of estoppel, their claims will be defeated by the principle that unauthorized statements and acts by the Commissioner or his representatives do not bind the United States or work an estoppel against the Government's clear right to foreclose its mortgages. United States v. Woodland Terrace, Inc., 4 Cir. 1961, 293 F.2d 505, 509; United States v. Anderson Apartments, D.C.S.C.1953, 114 F.Supp. 69, 71.

The conclusion is inevitable that the Government as an assignee of a valid mortgage has a clear right to foreclose its lien and that the defendants are subordinate lien holders without any legal relationship to the Government entitling them to any rights in this proceeding arising out of any violation of the Act or the regulations.

Motion for summary judgment granted. Settle order within ten (10) days on two (2) days' notice.