**UNITED STATES of America, Plaintiff,**

**v.**

**CHELSEA TOWERS, INC., Defendant.**

**Civ. No. 1083–67.**

United States District Court
D. New Jersey.

Oct. 27, 1967.

See, also, 3 Cir., 404 F.2d 329.

---

4. Section 264, Miss.Code 1942, Recompiled.

5. Section 720, Miss.Code 1942, Recompiled.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by Donald G. Targan, Asst. U. S. Atty., for the United States of America, plaintiff.

Gorson, Lazarow & Aron, by Joseph Lazarow, Atlantic City, N. J., Harold Finkle, New York City, of counsel, for defendant.

## OPINION

COHEN, District Judge:

On October 27, 1967 the plaintiff, United States of America, instituted this mortgage foreclosure action for default of the defendant, Chelsea Towers, Inc. (Chelsea), regarding a 156 unit cooperative apartment building in Atlantic City, New Jersey, constructed under the provisions of Title 2, section 213, of the National Housing Act.[1] Plaintiff moves for summary judgment, pursuant to Rule 56, F.R.Civ.P., 28 U.S.C. Defendant cross moves both for a stay of this action, pending determination of another action referred to hereinafter, and to join, as parties-defendant, others who were not parties to the mortgage in suit.

The record on these motions discloses that on January 23, 1961, defendant Chelsea contracted with the Z. B. M. Corporation, a New Jersey corporation, as the developer, for the purchase of the apartment complex upon its completion. On July 17, 1961, the Z. B. M. Corporation executed construction mortgage notes to the Provident Tradesmens Bank and Trust Company, of Philadelphia (Provident), and construction of the building proceeded. Further construction financing was made March 8, 1963 between the same parties. Shortly thereafter, on April 1, 1963 Provident assigned all its right, title and interest in this open-end construction mortgage to the Commonwealth of Pennsylvania School Employees' Retirement Fund (Retirement Fund). The building was completed on August 1, 1963 and in accordance with its contract, Z. B. M. Corporation delivered title to defendant Chelsea. Thereupon, Chelsea entered into two agreements with the Retirement Fund. The first of these involved a supplemental mortgage of $221,580.92 and the second was an agreement for a mortgage consolidation, modification and assumption agreement by which Chelsea agreed to assume and to pay all previous mortgage obligations on the apartment property and, further, that all prior mortgages were to be merged and consolidated in the supplemental mortgage. Thus consolidated, Chelsea's indebtedness to the Retirement Fund aggregated

---

[1]. 12 U.S.C. § 1715e.

$2,952,200.00. Thereupon, Chelsea entered into possession and assumed control and management of the apartment project. A little more than a year later, November 1, 1964, Chelsea defaulted in its mortgage payment to the Retirement Fund. The default persisted; whereupon, on July 21, 1965, the Retirement Fund assigned the mortgage to the Federal Housing Commissioner pursuant to its insurance-guaranty agreement with the Federal Housing Administration. Following assignment of the defaulted mortgage, Chelsea initiated negotiations with the Federal Housing Commissioner seeking to work out an agreement rehabilitating the mortgagor. On September 24, 1965, a "provisional workout arrangement" was entered into between Chelsea and the Federal Housing Administration, which was to terminate August 31, 1967. When this expiration date was reached two years later, Chelsea was still in default upon the mortgage. Thereafter, no remedy for the default being in the offing, the Federal Housing Administration referred the matter to the United States Attorney for foreclosure.

The total delinquency at the time this suit was started amounted to $403,659.86. Chelsea answered the complaint in foreclosure and interposed defenses thereto, which in substance denied the right of the plaintiff, United States of America, to foreclosure. Chelsea attacks the validity of the mortgage on the grounds of fraud, undue influence and wrongdoing on the part of the promoters, the developers, the Retirement Fund, the Federal Housing Commissioner and the FHA. In its Fourth Separate Defense, Chelsea specifically charges that the present plaintiff and its assignor, the Retirement Fund, acting in concert with others, provoked a breach of its original agreement of sale with the Z. B. M. Corporation which, in turn, forced it to execute legal instruments known to all others as being impossible of performance, thereby causing its default on the mortgage. Consequently, Chelsea argues, the grant of an equitable right of foreclosure should be denied to the plaintiff under the "unclean hands" doctrine.[2]

In essence, Chelsea maintains that it, as a non-profit cooperative apartment project, along with its tenants, were deluded and "hood-winked" into an unconscionable, if not impossible, bargain by the purchasing and financing machinations of the promoters, developers, builders, financiers and the FHA. These circumstances, Chelsea urges, require the submission of proofs at plenary trial in resolution of the attendant facts, as well as for the ascertainment of the intentions of the participants at the times in question, thereby precluding the grant of summary judgment on motion. Defenses of waiver and estoppel, arising out of its "workout arrangement" of September 24, 1965, particularly clause 7 thereof,[3] have also been asserted by Chelsea.

2. Defendant Chelsea Towers, Inc., filed a prior suit in the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-2851–63 against Louis Zaris, Zaris Construction Company, Inc., the Z. B. M. Corp., Federal Housing Administration, Fidelity Philadelphia Trust Company, as agent for Retirement Fund, and others seeking rescission of the entire apartment transaction or reformation of the documents involved to accord with the terms of its agreement of purchase with Z. B. M. Corporation, etc. This action was removed to this Court, Civil No. 640–64, and consolidation with the present action was sought. Consolidation was denied and on appeal review was refused for lack of jurisdiction of a final order. The subject matter of the collateral action, which had been removed to this Court, was also made part of the present action by Chelsea filing the same claims by way of a third party complaint and asserting the third party complaint as a counterclaim against the plaintiff, United States of America. Subsequently, on motion of the plaintiff, the counterclaim and third party complaint were dismissed. Numerous third party defendants had joined with the plaintiff in seeking the dismissal of the third party complaint.

3. Para. 7. "The Cooperative (Chelsea Towers Apartments) shall continue to prosecute the pending litigation (the new Jersey Superior Court action referred to in footnote 2 ante) against the Investor Sponsor and/or others, and institute such

It argues that the effect of the aforesaid provision was to grant a moratorium on its default, pending the disposition of the state court action, since removed to this Court.

■■■■ At oral argument counsel for the adverse parties conceded that the government's motion, although supported by documents, was unaccompanied by affidavits, thereby converting it to one for judgment on the pleadings under Rule 12(a) F.R.Civ.P. The supporting documents, extraneous to the pleadings, were depositions of certain FHA personnel. Accordingly, either under Rule 12(c) providing for judgment on the pleadings, or under Rule 56(b) for summary judgment, if a judgment is granted, it is essentially on the merits and may be entered only upon a conclusive determination of the legal issues presented. Farbenfabriken Bayer, A G v. Sterling Drug, Inc., 148 F.Supp. 733 (D.N.J.1957). If a genuine issue of material fact is generated in either situation, judgment is precluded. Huntt v. Government of Virgin Islands, 339 F.2d 309 (3 Cir. 1964); United States v. Blumenthal, 315 F.2d 351 (3 Cir. 1963). So that, on this motion for a judgment on the merits, all facts well pleaded in the complaint as well as the averments contained in the answer and separate defenses, but not conclusions of law, must be accepted as true.

■■■ Examining these pleadings, the supporting documents and the depositions, the plaintiff United States of America, as the reinsurance-assignee of the realty mortgage on Chelsea's apartment property, is entitled to judgment as a matter of law unless, of course, Chelsea has isolated an issue of material fact requiring plenary trial. This Court is of the opinion that Chelsea has utterly failed in this regard. The most fa-

vorable view which can be attributed to its opposition to foreclosure is that, inasmuch as it couldn't meet its mortgage financing commitments, it should be relieved of its bad bargain because of some afterthought of alleged fraud and duress of the plaintiff and others. It asserts these defenses as a shield against the plaintiff and seeks to join others in averting to circumstances involving the initiation of the entire project. However, it seems clear that, if the cooperative tenants have a damage action at all regarding the purchase of the project, which is what they claim in the removed action Civil 640–64, recourse is not against this plaintiff. The plaintiff, acting through the FHA, was not an original party to this mortgage. The subject mortgage was made with the Retirement Fund and, after continuous unremedied default, the plaintiff succeeded to the mortgagee's rights. Yet, in order to avoid the lawful consequences of its default, Chelsea seeks to impose a duty in retrospect upon the plaintiff, through the FHA, which alleged duty did not and does not exist either in fact or law. United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Significantly, Chelsea has been in continuous default since November, 1964. It even defaulted under the "workout agreement" by which a gratuitous opportunity was extended to it by the plaintiff to place its house in order and bring the mortgage current, thereby making the mortgagee whole. After this "workout agreement" expired by its express terms, the plaintiff, as was its right even during its two year term, commenced foreclosure in evident response to Chelsea's inability to extricate itself from its financial distress. Chelsea overlooks the rights reserved to the FHA in the "workout agreement," which expressly defeat the waiver and estoppel it contends for.

other litigation as may be necessary to obtain a judgment for damages and/or other relief upon any cause of action arising out of the formation, development, purchase and management of the Cooperative and the Project. The net proceeds of any such litigation shall be paid to

Federal Housing Administration and applied as a reduction of the delinquent interest and any balance then remaining to a reduction of the unpaid principal balance under the mortgage." (Parentheses added.)

Paragraph 5 thereof[4] specifically provides for its termination on August 31, 1967.

Insofar as Chelsea's allegations are concerned, that FHA misrepresented operating costs and rentals to the detriment of the cooperative, assuming *arguendo* that such averments are true, nevertheless, they do not go to the inception and validity of the mortgage in suit. On the record presented on this motion the issue is: Is the conduct of the plaintiff, claimed by the defendant to be violative of the National Housing Act, relevant to the Government's right to foreclose its assigned mortgage? This is a legal issue and not a factual question. United States v. Lawrence Towers, Inc., 236 F. Supp. 208, 210 (E.D.N.Y.1964). As aptly stated at page 210:

"We begin with the premise that the Commissioner did not make the loan but he merely insured it. * * * The legislative history of the Act does not disclose or intimate any intent on the part of Congress to benefit or protect anyone but the Government."

This is consonant with the avowed purpose of Congress to relieve a critical national housing shortage, following the postwar population explosion. Congress designed the National Housing Act, with its mortgage insurance program of guaranteeing lender-mortgagees' loans, to encourage development of housing throughout the United States. Neither the *Act*, nor the FHA Regulations implementing it, providing for appraisals, estimated costs, inspections, and projected rentals in the case of apartment projects, as here, created any legal relationship between the Government, or the FHA, and the individual mortgagors. The only assurance which was contemplated under the national mortgage insurance program was a guaranty by the Government that,

if the mortgage falls into an unremedied default, the FHA will repay the mortgage-lender and succeed to its rights under the mortgage. Since Congress imposed no duty extending to mortgagors, then none can be breached, as contended. Supervision of financing arrangements, incidental to FHA insured loans, most often benefits mortgagors. However, as stated in *Neustadt*, supra, 366 U.S. at page 709, 81 S.Ct. at page 1301:

"But at the same time, it was repeatedly emphasized (referring to the extensive legislative history of the National Housing Act) that the primary and predominant objective of the appraisal system was the 'protection of the Government and its insurance funds'; that the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees; and that 'there is no legal relationship between the FHA and the individual mortgagor.' Never once was it even intimated that, by an FHA appraisal, the Government would, in any sense, represent or guarantee to the purchaser that he was receiving a certain value for his money." (Parentheses supplied.)

The Court in *Neustadt* concluded that even if there was "negligent misrepresentation" on the part of the Government's employees or agencies, such conduct is tantamount to that giving rise to a common law action of deceit and is largely confined to the invasion of financial or commercial interests, for which no action lies against the Government, such being barred by the Federal Tort Claims Act, 28 U.S.C. § 2860(h). This then is the rule of law in the present case. Defendant's answer and separate defenses cannot bar the Government's right to foreclose its mortgage. Claims similar to those made in the instant case

4. "It is further understood that it is the intention of the parties hereto that these arrangements will prevail until August 31, 1967, provided, however. that FHA may elect to terminate this agreement at its sole discretion at any time without notice, with the right being expressly re-

served to take action under the mortgage at any time, if the mortgagor fails to comply with the terms of this agreement. We shall, at the end of such period, entertain a request for consideration to amortize any accrued amount of unpaid interest over a reasonable period of time."

were asserted in Choy v. Farragut Gardens 1, Inc., 131 F.Supp. 609 (S.D.N.Y. 1955). There, a class action was brought on behalf of tenants of an apartment house project against the owners and builders of the project as well as against the FHA, which had provided mortgage insurance. The plaintiffs claimed that the project was excessively financed resulting in windfall profits to the owners and in excessive rentals to the tenants. The Court observed that in essence the plaintiffs sought to make the FHA liable for its failure to estimate costs and projected rentals more realistically, all to the damages of the plaintiffs; the Court held that the FHA had no such obligation or liability and thereupon dismissed the complaint against the Government. In the present case, Chelsea likewise seeks to draw in the same type of collateral matters, by way of separate defense and counterclaim, the latter of which has been already dismissed on motion. As noted in *Neustadt*, the FHA does not insure the mortgagor against his inability to perform his mortgage obligations, for no legal duty extends from the FHA to mortgage-borrowers. Nor did Congress bestow any cause of action upon mortgagors for faulty appraisals, defective estimates or other administrative deficiencies, made by the FHA in the conduct of its mortgage insurance program. As stated in *Neustadt*, at page 709 of 366 U.S., at page 1302 of 81 S.Ct.:

> "That Congress did not thereby intend to convert the FHA appraisal into a warranty of value, or otherwise to extend to the purchaser any actionable right of redress against the Government in the event of a faulty appraisal, was made irrefutably clear in the Committee Hearings in both Houses of Congress * * *."

There remains for consideration defendant's defense that this foreclosure action should have been interposed in the removed Civil Action No. 640–64 [5] as a *compulsory* counterclaim

under Rule 13(a), F.R.Civ.P. This rule, in pertinent part, provides: "A pleading shall state as a counterclaim any claim which *at the time of serving the pleading the pleader has against any opposing party,* * * *" (emphasis supplied). As heretofore noted, the original complaint in Civil Action No. 640–64 was commenced in the New Jersey Superior Court in June of 1964, and removed to this Court on July 10, 1964, and allocated to another judge of this vicinage. The FHA filed its answer on September 9, 1964. At that time not only was there no default on the mortgage by Chelsea, but the Government had no rights at all in regard to the mortgage. It was only after default occurred on November 1, 1964, which persisted unremedied for a period of some eight months, that the exasperated mortgagee exercised its right on July 21, 1965 to assign the mortgage to the FHA in return for repayment of its loan under its insurance contract. Hence, the Government's right to elect to foreclose did not even arise until June of 1965, about a year after the state court action was filed. Patently, that which was nonexistent could not be asserted, by way of counterclaim or otherwise. Although the removed complaint was amended by Chelsea on June 2, 1967, some three years after removal, to join additional parties, among them Chelsea's own attorneys, Krooth and Altman, Esquires, and its own financial advisors and consultants, F.C.H. Services, Inc., alleging fraud and negligence against them, none of whom was a *party* to the mortgage instruments of August, 1963, the amended complaint set forth no new allegations against the FHA. The order granting leave to file the amended complaint also provided for all defendants to answer, or otherwise plead to it, within 90 days after service. Within such time, the FHA filed a motion to dismiss the complaint and it was joined by other defendants, who moved for dismissal or remand to the state court.[6] The FHA's

---

5. See footnote 2 ante.

6. Civil No. 640–64 had been pending before another Judge of this Court. Aside from

many pretrial discovery motions, the FHA, and others, had some 13 motions pending attacking jurisdiction, service of

motion for dismissal, together with numerous motions of other defendants preventing the joinder of issues, was pending when Chelsea moved in the present action for a stay of this proceeding, a vacation or modification of the order appointing a Receiver, a consolidation of Civil No. 640–64 with this action and a restraint of the Government from exercising any rights as a preferred shareholder. The motion was denied and the appeal was dismissed *per curiam* on November 21, 1968. Before Chelsea's appeal was decided, the cross motions presently under consideration were heard on October 18, 1968; they were taken under advisement and supplemental briefs submitted in January, 1969, Thus, the present case has been at issue between the principal parties, the Government and Chelsea, whereas Civil No. 640–64 has not. That which is ripe for decision should be decided. And, so it is with the present case.

This Court finds no merit to Chelsea's argument that the present foreclosure was a *compulsory* counterclaim which should have been pleaded in the removed action when the Government filed its answer to the original complaint. This argument overlooks the fact that the Government's right to foreclose was non-existent at that time. Later, when it did come into existence followed by the amended complaint in this Court, the pendency of the Government's own motion to dismiss, before answer to the amended complaint, stayed the need for any further responsive pleading. Furthermore, the Government, in the final analysis, could *elect* to foreclose or not, or *elect* to attempt another "workout arrangement," or not, as it deemed fit. That the Government chose to foreclose in an independent action is of no consequence in the sequence of these circumstances, as its cause of action is a *permissive* one. However, even assuming

*arguendo* the action to foreclose to be compulsory, rather than permissive under Rule 13(a), F.R.Civ.P., the time for its pleading was abated by its unresolved motion going to the jurisdiction of the Court in the removed action. Moreover, the pursuit of an independent action, as here, was likewise not precluded during the interim. Notwithstanding these considerations this proceeding between the principal parties having reached issue first on a question of law, then, should the Government prevail, the question of counterclaim would be dissipated. It should be observed also, that had the Government failed to follow the course that it did, i. e., moved for judgment, expenses of the receivership would continue, all to the present and ultimate damage of the Government. As with any litigant, it must mitigate its damages. Lawhorn v. Atlantic Refining Co., 299 F.2d 353, 356 (5 Cir. 1962). This, the Government has assiduously sought to accomplish.

■ In conclusion, Chelsea's unsupported assertions that in August of 1963, it was inveigled into entering into this mortgage transaction with the Retirement Fund, whose money it accepted and used in the purchase and operation of the apartment complex, as a result of alleged misrepresentation, deceit, fraud and negligence of a number of persons, such as the promoters, the developer, the builder, its own attorneys and financial consultants, none of whom was a *party* to the mortgage now held by the Government, cannot defeat the latter's right to foreclosure. Although, in broadest "buckshot" fashion, everyone associated in the slightest degree with this unfortunate project has been accused by Chelsea, nowhere in the record of this case has there been any demonstration of fact, by affidavit, deposition, document, or otherwise, despite discovery available to it for some four years, of any wrong-

process, for partial summary judgment, extending the time to answer, and for remand to the State Court, all of which were unresolved when, because of that Judge's illness, the case was reassigned

on May 13, 1968 to the present writer. Obviously, Civil No. 640–64 was not at issue during that period of time, nor is it now.

doing on the part of the mortgagee-assignor, Retirement Fund. The most that has been shown is a blatant conclusion that the mortgagee and FHA acted "in concert with others" in the creation of Chelsea's impossible obligation. On the contrary, the uncontradicted fact on this record is that the Retirement Fund was an innocent party throughout the negotiations and in the finalizing of the mortgage transaction, and who gave Chelsea very substantial consideration in return for its note and mortgage. Accordingly, it was and is entitled to enforce all its terms and avail itself of the remedies provided by law—so too is its assignee, the Government, under its reinsurance contract with the mortgagee-assignor.

▌▌▌ Chelsea contends that before the mortgage can be foreclosed, its validity must be determined in its removed state court action which seeks rescission or reformation. This is the same argument made upon its motion for stay and consolidation which was denied heretofore. Neither on its prior motion nor now has Chelsea attempted to show mutuality of mistake or fraud on the part of the mortgagee, Retirement Fund.[7] While allegations of fraud may be full of sound and fury, unless supported by specificity of facts giving rise to a genuine issue of material fact, they remain conclusions without merit. Its attempt to interject such a challenge against the Government in this case by its counterclaim based solely upon the conduct of others, unrelated to the mortgage, was dismissed as impertinent to this foreclosure. The same or similar charges sought to be incorporated into its answer and separate defenses merit the same disposition. For Chelsea has had ample opportunity to marshal facts in support of such grave charges against the plaintiff and its assignor—but it has failed to do so on the record in this case. This record demonstrates uncontradicted pivotal facts.

Chelsea overlooks the fact that it was in continuous unremedied default upon this mortgage for nine months, whereupon it initiated the arrangement of 1965 with the FHA in an effort to financially rehabilitate itself. *Then,* in a cooperative attempt with the FHA to extricate itself from the web of its own impecunious circumstances, Chelsea freely acknowledged the validity of the mortgage and conceded all of the rights of the FHA in regard thereto. *Now,* however, it seeks to repudiate that position as well as its singular and paramount obligation upon the mortgage by lashing out at anyone even remotely connected with its apartment complex by trying to join them as additional parties defendant in this action and imputing their conduct to the mortgagee and the FHA, simply because it seems convinced by hindsight that it cannot meet its mortgage obligation since its default in November of 1964.

In effect, Chelsea wants to retain the apartment project at the direct expense of the Government who, saddled with the mortgage by assignment under the insurance contract with the mortgagee, was obliged and did in fact pay the mortgagee-lender by reason of Chelsea's unremedied default thereon.

▌▌▌ At no time, since its default over four years ago, has Chelsea substantially complied with the material terms of the mortgage or consummated the objectives of the "provisional workout agreement." Only one who has complied or can comply with all the material terms and conditions of a mortgage contract can avoid its foreclosure; only one who has remedied or can remedy its own default can stay foreclosure by invoking such equitable relief pending the determination of a collateral matter. Contel Construction Corp. v. Parker, 261 F. Supp. 428 (E.D.Pa.1966).

Furthermore, Chelsea's ingenious legal maneuvers to thwart or frustrate the

---

7. There is no evidence that the mortgage was anything other than that agreed upon by the parties to it. See: 76 C.J.S. Reformation of Instruments §§ 28, 29, pp. 366–370; 59 C.J.S. Mortgages §§ 141,

14.2. Cf: Lesser v. Strubbe, 67 N.J.Super. 537, 545, 171 A.2d 114 (App.Div. 1961) aff'd 39 N.J. 90, 187 A.2d 705 (1962).

Government in the exercise and the protection of its own rights cannot prevail. Whether Chelsea initially made an imprudent or harsh bargain, rather than one impossible of performance; whether it has a cause of action for damages against those by whom Chelsea alleges it was victimized are matters quite apart and remain to be determined in the removed action. Such considerations, however, cannot defeat the rights of the plaintiff in the present action.

Finally, Chelsea ignores uncontradicted salient facts in the principal action. It accepted the benefits of the mortgage which enabled it to purchase the cooperative apartment; it accepted the incidental and derivative benefits of the FHA insurance running to the mortgagee-Retirement Fund, which guarantee made possible Chelsea's acquisition of mortgage financing. However, when the coin is turned, we find that it ignores its own continuous default on the mortgage, as well as its accumulated delinquency of over four hundred thousand dollars; it ignores the FHA's attempts to assist it over a two year period to resolve its own financial muddle; it ignores the payment of its own mortgage obligation by the FHA to the insured mortgagee, and it ignores the rights of the Government under this assigned mortgage.

In a word, Chelsea seeks to salvage itself from its own plight in regard to its ownership and operation of the cooperative apartment by challenging the rights of the mortgagee-Retirement Fund and the plaintiff, United States of America, both of whom have substantially, if not unalterably, changed their positions in reliance upon the conduct of defendant, Chelsea, and irrespective of the damages already resultant therefrom. Indeed, the judgment of foreclosure sought by the Government in this action is warranted on the uncontradicted facts, as well as on principles of law and equity.

Accordingly, judgment of foreclosure in favor of the plaintiff, United States of America, against the defendant, Chelsea Towers, Inc., shall be granted on the plaintiff's motion. The cross motion of defendant, Chelsea Towers, Inc., shall be denied.

Counsel for the plaintiff shall submit appropriate orders.