**FORCUM–LANNOM, INC., Plaintiff,**

v.

**James A. BERRY and Wife, Pauline Margaret Berry, et al., Defendants.**

**No. C–71–109.**

United States District Court,
W. D. Tennessee, W. D.

Feb. 2, 1972.

A. D. Walker, Jr., Dyersburg, Tenn., for plaintiff.

Johnnie L. Johnson, Jr., Asst. U. S. Atty., Memphis, Tenn., for U. S. Government.

Melvin T. Weakley, Rodgers Menzies, Dyersburg, Tenn., for defendants Berry.

T. Robert Hill, Dyersburg, Tenn., for defendant McPhearson.

## MEMORANDUM DECISION AND ORDER

BAILEY BROWN, Chief Judge.

This cause came before the Court for a plenary hearing on December 13, 1971 in Dyersburg, Tennessee.

Plaintiff, Forcum-Lannom, Inc., seeks to enforce a lien under T.C.A. §§ 64–1102 and 64–1104 on real property owned by the defendants James A. and Pauline M. Berry and mortgaged to the defendant United States of America through the Farmers Home Administration (hereafter FHA). The Berrys have cross-claimed against the other defendants, the FHA and their contractor, Paul McPhearson, to indemnify them against any judgment should plaintiff prevail. The United States has similarly cross-claimed against defendant McPhearson.

At the trial of this matter the Court denied the motions of the United States for summary judgment as to plaintiff's claim and denied the Government's motion to dismiss the Berrys' cross-complaint against it. Following the proceedings all parties have submitted post-trial briefs.

On July 1, 1970, the Berrys entered into a contract with defendant McPhearson to build them a home. The FHA loaned the Berrys $15,000 on July 7, 1970 secured by a deed of trust on the realty that was recorded the same day.

The funds were placed in an account at the First Citizens National Bank in Dyersburg and a representative of the FHA had to sign every check for money drawn on the account.

Pursuant to an agreement with defendant McPhearson, plaintiff began supplying materials to the work site on July 13, 1970. Plaintiff also advanced to McPhearson certain amounts of cash to allow the contractor to pay his work crew. The first funds were advanced by the FHA to McPhearson on July 27, 1970.

In November, 1970, the Berry home was substantially completed. On November 12, 1970, McPhearson certified to the Berrys on FHA Form 424–9 that all materials and labor utilized in building their home had been paid for in full. Neither McPhearson or the Berrys obtained a completed "Release by Claimants" form (FHA 424–10), but the FHA went ahead and made a final disbursement of $8,054 to McPhearson on November 12, 1970. Apparently FHA representatives deviated from normal procedure in making the final payment to the contractor before he had obtained releases from his suppliers. The FHA relied on defendant McPhearson to obtain the releases after receiving his final payment. Defendant McPhearson had bid the Berry job as well as several others in the Dyersburg area too low. He was spreading payments he received from the FHA for the Berry home to cover expenses incurred on other jobs.

Plaintiff discovered in December, 1970 that the FHA had closed out the Berry loan account, but McPhearson had not paid for a substantial amount of the materials and money supplied to him by plaintiff to complete the job. On January 9, 1971, plaintiff served on the Berrys a notice of its Mechanic's, Materialmen's and Furnisher's lien. That lien was recorded January 12, 1971.

William R. McIntosh, County Supervisor for the FHA, wrote the State Director of the agency on April 14, 1971, indicating the FHA knew plaintiff was

supplying materials for the Berry job before final disbursement was made by the FHA to McPhearson. The FHA, he admitted, through inadvertent error, had failed to place plaintiff's name on the final disbursement check.

Plaintiff seeks to have its lien securing the payment of $10,918.43 held prior to the lien of the United States of America and all other parties. It asks that the Berry home and lot be ordered sold at public auction in accordance with Tennessee law so that its lien may be satisfied.

It is settled that federal rather than state law governs the rights and obligations of the United States under security instruments such as the mortgage involved here. United States v. Helz, 314 F.2d 301 (6th Cir.1963); Fred W. Beal, Inc. v. Allen, 287 F.Supp. 126, 128 (D.C.Me.1968). The basic federal rule in priority of lien cases is found in Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592 (1827):

> "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant."

This rule of "first in time, first in right" has been specifically applied to give priority to a federal mortgage lien over a subsequently perfected state mechanics lien, *Beal, supra*; Southwest Engine Co. v. United States, 275 F.2d 106 (10th Cir., 1960); United States v. Latrobe Construction Co., 246 F.2d 357 (8th Cir.), cert. denied 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189 (1957).

The FHA mortgage was first in time. It was also choate at the time it was entered into since it embodied a promise to loan the Berrys $15,000. Without that commitment construction would never have begun.

Plaintiff contends the failure of the FHA to obtain from the contractor a

completed release by claimants form before it made a final disbursement to him would bar the priority of its lien. Plaintiff argues that estoppel must be applied because the agency knew plaintiff had supplied materials for the Berry home and admits its inadvertent failure in not placing plaintiff's name on the final check given McPhearson. Plaintiff contends that the FHA's employee's reliance on the mere word of the contractor that all debts had or would be paid seems to defeat the purpose of completing the release by claimants form before disbursing the remainder of the loan.

It is clear that the FHA and McPhearson did not conspire to defraud the plaintiff. It is indeed unfortunate, however, that the FHA placed so much reliance on the assurances of defendant McPhearson, who, it has been shown, was quite unreliable.

The plaintiff has not cited this Court, nor do we believe there is, any Act or regulation governing the activities of the FHA either indicating or suggesting some duty, created by contract or otherwise, owed by the FHA to the plaintiff. The legislative history of the relevant Acts make it clear that Congress intended to benefit and protect only the Government. United States v. Lawrence Towers, Inc., 236 F.Supp. 208, 210 (E.D.N.Y.1964). This view of the law is emphasized by United States v. Neustadt, 366 U.S. 696, 709, 81 S.Ct. 1294, 1301, 6 L.Ed.2d 614 (1961), where a home buyer attempted to recover from the Government losses sustained by the payment by him of a price in excess of the fair market value of the property upon a *negligently excessive FHA appraisal.* (Emphasis supplied.) In referring to the legislative history of the statute, the Court in denying recovery stated:

"[I]t was repeatedly emphasized that the primary and predominant objective of the appraisal system was the 'protection of the Government and its insurance funds'; that the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees; and that 'there is no legal relationship between the FHA and the individual mortgagor.' Never once was it even intimated that, by an FHA appraisal, the Government would, in any sense, represent or guarantee to the purchaser that he was receiving a certain value for his money.

"Nor is there any indication that Congress intended, by its 1954 addition of § 226, to modify the legislation's fundamental design from a system of mortgage repayment insurance to one of guaranty or warranty to the purchaser of value received."

Plaintiff is in no better position than the purchaser of the land for value would have been. There was no warranty or guarantee running from the Government to them. There is no suggestion in the regulations that any violation thereof will result in the invalidation or subordination of the mortgage lien.

If plaintiff seeks to rely on any theory of deceit or misrepresentation, such a claim would be barred by the Federal Torts Claim Act which excludes all claims arising out of negligent as well as deliberate misrepresentation. United States v. Neustadt, *supra.* Plaintiff's reliance on estoppel is misplaced since ordinarily estoppel does not apply against the sovereign. United States v. Woodland Terrace, Inc., 293 F.2d 505, 509 (4th Cir., 1961); United States v. Anderson Apartments, 114 F.Supp. 69, 71 (D.C.S.C., 1953). See also United States v. Rossi, 342 F.2d 505, 506–507 (9th Cir., 1965).

The Court is of the opinion that the Government's lien has priority over that held by the plaintiff.

It is therefore ordered and adjudged and declared that the · plaintiff's, Forcum-Lannom, Inc.'s claimed lien is subordinate to the lien of the United States of America, and all cross-claims seeking indemnity only in the event plaintiff's

claimed lien was held to be superior to the FHA mortgage, are dismissed.

A judgment will be prepared for entry carrying into effect this decision.

The parties other than the FHA will file with the Court within ten days a memorandum containing their view as to the remaining issues, if any, that must be or should be decided by this Court.