UNITED STATES of America, Plaintiff,

v.

**WINTHROP TOWERS et al.,
Defendants.**

**No. 77 C 2874.**

United States District Court,
N. D. Illinois, E. D.

July 6, 1979.

Thomas P. Sullivan, U. S. Atty., John H. Mahoney, U.S. Department of Housing and Urban Development, for plaintiff.

Lionel G. Gross, Altheimer & Gray, Chicago, Ill., for defendants.

1. We have jurisdiction under 28 U.S.C. § 1345.

2. As of November 30, 1978, the mortgage payments due under the note totalled $936,395.51.

MEMORANDUM OPINION

GRADY, District Judge.

This is a foreclosure action brought on behalf of the Secretary of Housing and Urban Development ("Secretary" and "HUD").[1] Defendant Winthrop Towers is a limited partnership, organized and existing under the laws of the State of Illinois, which is the beneficial owner of certain property in the Uptown area of Chicago known as Winthrop Towers. Defendant Metropolitan Bank and Trust Company is trustee of the land trust that holds title to Winthrop Towers.

Winthrop Towers, the subject property of the trust, is a 281 unit, 19 story housing project for low and moderate income tenants. It was constructed with a low interest, federally insured mortgage loan of about 4.7 million dollars in 1969 and 1970. Defendants failed to meet installment obligations under the mortgage beginning in December 1973. HUD reimbursed the insured mortgagee and took the mortgage by assignment. Exercising its rights under the mortgage, HUD accelerated the remaining payments and now declares the entire outstanding principal and interest due.[2]

Before us is plaintiff's motion for summary judgment. Since defendants do not dispute that the mortgage is in arrears, the only issue posed by plaintiff's motion is whether certain affirmative defenses raised by defendants are legally sufficient to defeat summary judgment. We hold that they are not, and consequently we will grant plaintiff's motion.

Defendants raise two substantially similar affirmative defenses. First, defendants argue that because Winthrop Towers is currently providing decent, low-cost housing to those persons Section 221 of the National Housing Act was designed to serve, foreclosure would be in derogation of national housing goals. See generally, 12 U.S.C. § 1715l(a); 42 U.S.C. § 1441. Second, defendants contend that HUD has not made

The amount due after acceleration equals $4,981,054.27 (Tyner Affidavit, Attachment B to Motion to Secure Possession).

available to Winthrop Towers Section 8 funds[3] and additional operating subsidies that it has made available to other projects. This, defendants argue, renders the decision to foreclose arbitrary and capricious.[4]

Both affirmative defenses are predicated on the legal proposition that a federal court may review the Secretary's decision to foreclose on a housing project when a mortgagor defaults on its federally-insured loan. Under the Administrative Procedure Act, final agency action[5] is ordinarily subject to judicial review except where a statute precludes such review, or where agency action is committed to agency discretion by law. 5 U.S.C. §§ 701, 702. The latter exception is applicable, the Supreme Court has stated, where "statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). We believe that in this case there is "no law to apply," and thus the Secretary's decision to foreclose is one that is committed by law to agency discretion.

The language of the statute supports our conclusion. Section 207(k) of the National Housing Act, which § 221 incorporates, 12 U.S.C. § 1715*l*(g)(2), authorizes the Secretary to "institute proceedings for foreclosure on the property covered by any such insured mortgage and prosecute such proceedings to conclusion." 12 U.S.C. § 1713(k)(2). *See also,* 42 U.S.C. § 3535(i). This section is a blanket authorization, with no restrictions or standards whatsoever.

Defendant argues that the applicable standard is found in 42 U.S.C. § 1441, which provides:

The Congress declares that the general welfare and security of the Nation and the health and living standards of its people require . . . the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family . . . . .

We find no guidance in this general statement of policy.[6] In fact, the breadth of that language reinforces our conclusion that there are no legal standards by which we could gauge the propriety of the Secretary's decision to foreclose.

The legislative history of the National Housing Act supports our belief that the decision to foreclose on delinquent properties was intended to be beyond judicial review. As originally enacted, the statute required that the FHA acquire or foreclose a multifamily housing project within one year of default on the mortgage. Section 108 of the Housing Act of 1964 abolished this requirement. The Senate Report on the amendment explained:

The deletion of the 1 year requirement would give FHA latitude to consider each case on its own merits and to take such action as is required in each case.

The committee has been advised that if the 1 year requirement is eliminated, the FHA would not hold foreclosure action or action to acquire title in abeyance indefinitely, but where there is not hope of

---

3. Section 8 Loan Management set-aside is a program by which HUD may contract to pay all rent above 25 per cent of the tenant's income in a certain number of units. *See* 24 C.F.R. § 886; 42 U.S.C. § 1437f.

4. Plaintiff of course disputes the factual predicates of defendants' arguments. For instance, plaintiff contends that a host of factors, including alleged intransigence by Winthrop Towers' management in repairing certain building code violations, entered into the consideration to foreclose. These questions of fact may not be resolved on a motion for summary judgment. The only determination we may make is whether these questions are material, so as to defeat judgment for plaintiff. *See* Fed.R.Civ.P. 56(c). Since we have determined that the affirmative

defenses are legally insufficient, the questions of fact need not be resolved.

5. The Administrative Procedure Act extends to action of "each authority of the Government of the United States," which includes the Department of Housing and Urban Development. 5 U.S.C. § 701. *Cf. Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

6. We find similarly unenlightening the statement of purpose for the § 221 program: "This section is designed to assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715*l*(a).

reinstatement or the project is being mismanaged, foreclosure would be undertaken as soon as possible after a default. *In this connection the committee wishes to explain that the primary purpose of the amendment is to give the FHA the discretion to work with the mortgagor, in a promising case only, for a reinstatement of the loan.*

S.Rep. 1265, 88th Cong., 2d Sess., at 39, 40 (1964) (emphasis supplied). Significantly, while Congress authorized the Administrator to work with a mortgagor for eventual reinstatement of the loan, it left her discretion to foreclose virtually absolute.

We note that here the grant of discretion to the Secretary is much broader than in other instances where courts have held that agency action was committed to agency discretion by law. In *Harlib v. Lynn*, 511 F.2d 51 (7th Cir. 1975), for example, the Seventh Circuit followed the lead of the First, Second and Third Circuits in holding that the Secretary's decision to approve a rent increase for § 221 housing projects was committed to agency discretion by law.[7] In determining whether a proposed rent increase should be approved, the Secretary is bound by regulation to consider such factors as (1) what income is necessary to maintain the economic soundness of the project, and (2) what income is necessary to provide a reasonable return on the investment consistent with providing reasonable rentals to tenants. 24 C.F.R. § 221.-531(c)(1), (2). In *Harlib* and the cases which preceded it, therefore, there was some standard by which the Secretary's decision could be measured. At the least, a federal court could have determined whether the Secretary considered those factors she was bound to by law. Nevertheless, those courts held the Secretary's decision non-reviewable. In this case, there are no regulations which compel the Secretary to consider any alternatives to foreclosure. We think that *a fortiori* the Secretary's decision to foreclose is committed to her discretion by law.[8]

In support of its contention that the Secretary's decision to foreclose on Winthrop Towers is subject to judicial review, defendant relies on *Kent Farms Co. v. Hills,* 417 F.Supp. 297 (D.D.C.1976) and *United States v. American National Bank,* 443 F.Supp. 167 (N.D.Ill.1977). In each of those actions, HUD was denied the right to immediately foreclose despite having established the existence of a significant and probably incurable mortgage delinquency. Quoting the *Kent Farms* decision, Judge Marshall of this court stated in *American National Bank, supra:*

> HUD must show more than a legal right to foreclose. HUD is not simply a banker. Before it acts because of default on a project clearly otherwise meeting housing objectives it must consider national housing policy and decide what further steps authorized by Congress it will take to assure continuity of the decent, safe, sanitary, low-cost housing then being provided.

443 F.Supp. at 175.

We respectfully decline to follow *Kent Farms* and *American National Bank.* We believe those decisions interfere with the Secretary's exercise of her statutory duties in a manner unintended by Congress. Moreover, we think those decisions are unsupported by legal precedent. Both Judge Marshall in *Kent Farms* and Judge Gesell in *American National Bank* placed primary reliance on the case of *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). A careful reading of that case, however, reveals that it is distinguishable from factual situations such as those present in *Kent Farms,* in *American National Bank,* and here.

---

7. *See Hahn v. Gottlieb,* 430 F.2d 1243 (1st Cir. 1970); *Langevin v. Chenango Courts, Inc.,* 447 F.2d 296 (2d Cir. 1971); *People's Rights Organization v. Bethlehem Associates,* 487 F.2d 1395 (3d Cir. 1973).

8. Like the Second Circuit Court of Appeals in *Langevin v. Chenango Court, Inc.,* supra, note

5, " 'we do not reach the question whether courts may intervene in those rare cases where the FHA has ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error . . . .' " 447 F.2d at 303 (citation omitted).

In *Overton Park, supra,* the Court held that plaintiffs could challenge in federal court the decision by the Secretary of Transportation to approve federal funding for an interstate highway which was to be routed through a city park. The Court reasoned that there "was law to apply" because the Federal-Aid Highway Act prohibited the Secretary from approving any project that required the use of any public parkland "unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park . . . ." Here there are no restrictions on the Secretary's authorization to foreclose on delinquent projects. If the National Housing Act prohibited foreclosure unless the Secretary first determined that no other course would better serve national housing policy, then *Overton Park* might be apposite. Since that is not the case, however, *Overton Park* does not require the result in *Kent Farm* or *American National Bank.*

Furthermore, the decisions in *Kent Farm* and *American National Bank* ignore the obvious interest of the Secretary in expeditiously moving to minimize losses from the insurance fund, thereby safeguarding the fund for future projects. This interest has been recognized by Congress and the courts. The House report on early amendments to Section 207 of the National Housing Act noted:

It is further felt that it is undoubtedly to the interest of the Administrator to obtain control of these properties at the earliest moment after default in order to preserve them and the income derived therefrom without delay.

H.R. 1665, 75th Cong. 2d Sess. at 4 (1937).

Federal courts, by rejecting various equitable defenses to foreclose actions, have also acknowledged the paramount interest of the Government in foreclosing on delinquent properties. In *United States v. Chelsea Towers, Inc.,* 295 F.Supp. 1242 (D.N.J. 1967), defendant attempted to forestall foreclosure by alleging that the FHA was guilty of unclean hands, fraud and duress in luring defendant into an agreement the terms of which it could not satisfy. The court rejected the proffered defenses, noting:

In effect, Chelsea wants to retain the apartment project at the direct expense of the Government who, saddled with the mortgage by assignment under the insurance contract with the mortgagee, was obliged and did in fact pay the mortgagee-lender by reason of Chelsea's unremedied default thereon.

\*    \*    \*    \*    \*    \*

Only one who has complied or can comply with all the material terms and conditions of a mortgage contract can avoid its foreclosure; only one who has remedied or can remedy its own default can stay foreclosure by invoking such equitable relief pending the determination of a collateral matter. . . .

Furthermore, Chelsea's ingenious legal maneuvers to thwart or frustrate the Government in the exercise and the protection of its own rights cannot prevail. Whether Chelsea initially made an imprudent or harsh bargain, rather than one impossible of performance; whether it has a cause of action for damages against those by whom Chelsea alleges it was victimized are matters quite apart and remain to be determined in the removed action. Such considerations, however, cannot defeat the rights of the plaintiff in the present action.

295 F.Supp. at 1250–51.

Similarly, in *United States v. Sherman Gardens Company,* 298 F.Supp. 1332 (D.Nev.1967), the court held that the affirmative defenses of impossibility, prevention of performance and commercial frustration were unavailing to defendant in an action brought by the Government on a promissory note and for foreclosure of a trust deed on a housing project. Defendant there argued that government agents allegedly issued commitments for loan insurance and financed competing housing projects that disadvantaged defendant's project. Rejecting these arguments, and granting plaintiff summary judgment, the district court observed:

As affirmative defenses, the assertions of impossibility, prevention of performance and commercial frustration deserve no better fate. This was a simple loan transaction. The government did not guarantee a profitable operation or limit the source of the funds to be used to pay the loan.

298 F.Supp. at 1334.

In *United States v. Woodland Terrace, Inc.,* 293 F.2d 505, 507 (4th Cir. 1961), the court held that alleged statements by a Government employee to the effect that FHA would not foreclose were insufficient to raise a triable issue of fact in a foreclosure action. The court noted:

> The United States actively promoted the construction of such projects by private business and the use of FHA insured financing. In doing so it promised to be a lenient and understanding creditor, but we agree with the District Court that it did nothing to relinquish its right of foreclosure of a mortgage in default assigned to it if it decided to pursue that course.

293 F.2d at 507.

Finally, in *United States v. Sylacauga Properties, Inc.,* 323 F.2d 487 (5th Cir. 1963), the Court of Appeals reversed the decision of a district court granting repeated extensions of time to defendant over the Government's continuous objection. The court stated:

> It is not within the province of the mortgagor or, indeed of a district court to decide whether a moratorium on an FHA mortgage is in the best interests of the Government. To the extent that there is any latitude in determining when to foreclose an FHA mortgage after a default, the determination is an administrative matter for the Federal Housing Commissioner. The prompt and effective enforcement of the Government's rights to a foreclosure and sale, embodied within the mortgage and the traditional principles of mortgage law, is in consonance with the policy of the National Housing Act.

323 F.2d at 491.

We will not adopt a rule here that will promote dilatoriness by mortgagors in meeting payments, if not actual refusals to pay. Defendants here voluntarily assented to the terms of the mortgage. They reaped the benefits of a below-market interest rate and other favorable financing terms. Having failed to meet their obligations under the agreement, they should not be permitted to delay the Government in the exercise of its contractual and statutory rights.

Plaintiff's motion for summary judgment is granted. Plaintiff should submit an appropriate judgment order.