Bob WICHMAN *v.* Tom HUGHES, d/b/a
Oak Brook Stables

5-5155                                              450 S. W. 2d 294

Opinion delivered February 23, 1970

*W. Q. Hall,* for appellant.

*Putman, Davis & Bassett,* for appellee.

George Rose Smith, Justice. The only question presented by this appeal is whether the defendant-

appellee, Tom Hughes, has sufficiently transacted business in Arkansas to allow our courts to exercise personal jurisdiction over him under the Uniform Interstate and International Procedure Act, Ark. Stat. Ann., Title 27, Ch. 25 (Supp. 1969). The trial court answered that question in the negative and therefore granted the defendant's motion to quash service.

The facts are agreed upon by stipulation. The plaintiff Wichman sells horses at his home north of Huntsville, in Madison county. In November, 1968, Hughes, a resident of Illinois, sent Robert DeVore, his manager-trainer, to Arkansas with authority to buy horses for Hughes. DeVore bought two horses from Wichman for $4,100, gave a $500 check as a down payment, and agreed to take delivery by sending a van for the horses. Three days later DeVore telephoned Wichman and bought a third horse for $600. In mid-December another Hughes employee came to Arkansas with a van, picked up the three horses, and took them to Illinois, giving a $4,200 check for the rest of the purchase price. That check was not honored, apparently because the maker stopped payment. This suit upon the check followed.

A state's permissible personal jurisdiction over non-residents was expanded by the Supreme Court's decisions in *McGee* v. *International Life Ins. Co.*, 355 U. S. 220 (1957), and *Hanson* v. *Denckla*, 357 U. S. 235 (1958), which held in substance that a person who avails himself of the privilege of conducting activities in another state is subject to suit there if his contacts in that state have been such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice.

Illinois has been a leader in exercising the extended jurisdiction made possible by the Supreme Court's holdings. The Uniform Act was patterned after the Illinois long-arm statute and, according to the Commissioners who drafted it, "should be given the same expansive interpretation that was intended by the drafts-

men of the Illinois Act and has been given by the courts of that state." Commissioners' Note to § 1.03 of the Uniform Act, 9B U. L. A.

It cannot be doubted that the Illinois courts would uphold the assertion of personal jurisdiction over this appellee upon the facts of this case. Our statute confers personal jurisdiction over a nonresident as to a cause of action arising from that person's "transacting any business in this State." Ark. Stat. Ann. § 27-2502. Professor David P. Currie, in an exhaustive study of the Illinois cases, points out that the Illinois courts have applied their long-arm statute to situations involving, as here, a single transaction:

> The Illinois statute is not explicit on this, and the "transaction of any business" could have been held by an unsympathetic court to be a synonym for the earlier restrictive term "doing business." Again in the spirit of the statute's purpose to expand jurisdiction to the modern constitutional limit, however, the courts have consistently upheld jurisdiction under section 17 over an isolated business transaction with the requisite connection to this State. [Citing and discussing *Berlemann* v. *Superior Distrib. Co.*, 17 Ill. App. 2d 522, 151 N. E. 2d 116 (1958); *Kropp Forge Co.* v. *Jawitz*, 37 Ill. App. 2d 475, 186 N. E. 2d 76 (1962); and *National Gas Appliance Corp.* v. *AB Electrolux*, 270 F. 2d 472 (7th Cir., 1959).]

> These decisions are plainly correct. A single transaction resulting in injury or loss to a person within the reach of a policy of an Illinois law is sufficient to give the State an interest in providing a forum for his compensation, whether the suit be called "tort" or "contract." . . . It does not seem unfair to the defendant, in the light of this interest to require him to defend in Illinois a suit arising out of such a contract, when he has sent his agents into the State to solicit or to conclude the agreement. That the defendant has also conducted other

and unrelated activities in the State may or may not make it more convenient for him to defend here, but the basic requirement that he make voluntary contact with the State is satisfied without such additional contacts. [Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U. of Ill. Law Forum 533, 565.]

Other cases involving a statute like ours, considering a single contractual transaction, and sustaining the exercise of personal jurisdiction, include: *Clinic Masters* v. *McCollar,* 269 F. Supp. 395 (D. C. Colo., 1967); *National Bank of America at Salina* v. *Calhoun,* 253 F. Supp. 346 (D. C. Kan., 1966); *Hamilton Nat. Bank of Chattanooga* v. *Russell,* 261 F. Supp. 145 (D. C. E. D. Tenn., 1966); *Cox* v. *District Court,* 417 P. 2d 792 (Colo., 1966); *Melfi* v. *Goodman,* 69 N. M. 488, 368 P. 2d 582 (1962); *Griffiths & Sprague Stevedoring Co.* v. *Bayly, Martin & Fay,* 430 P. 2d 600 (Wash., 1967).

We regard the principle underlying those decisions as a sound basis for the assertion of jurisdiction over this appellee. Hughes voluntarily sent his agent into Arkansas to buy horses. He voluntarily sent another agent here to remove the animals from this jurisdiction, leaving the seller with only a check that proved to be worthless. The transaction was presumably governed by Arkansas law. Hughes presumably relied upon that law in deciding that he was not bound to pay the full purchase price. We can see nothing unfair, nothing that offends traditional notions of justice and fair play, in requiring Hughes to defend his position in the courts of this state.

Reversed, with directions to overrule the motion to quash service.