**W.D. McMAHEN, Plaintiff,**

v.

**PARAMOUNT HOLDINGS, INC., Defendant.**

**No. LR–C–84–1032.**

United States District Court,
E.D. Arkansas, W.D.

March 18, 1985.

H. Edward Skinner, Little Rock, Ark., for plaintiff.

Victor A. Fleming, Little Rock, Ark., for defendant.

## ORDER

HENRY WOODS, District Judge.

Plaintiff, a licensed real estate broker and resident of the State of Arkansas, filed the complaint herein seeking to recover a brokerage commission he allegedly was wrongfully deprived of by the defendant. He also seeks to recover certain special

damages as well as punitive damages. Defendant is a corporation organized and existing according to the laws of the State of Delaware with its principal place of business in New York, New York. Defendant does not maintain an office in Arkansas nor has it ever been qualified to do business in Arkansas. Defendant seeks to have service quashed and to have this case dismissed, arguing that the Arkansas Long Arm Statute does not authorize service upon it and that even if it does, an exercise of this Court's *in personam* jurisdiction over it would be unconstitutional.

■ In resolving the issues raised by the defendant's motion, the Court must first determine whether the facts satisfy the Arkansas Long Arm Statute and assuming that this inquiry is answered in the affirmative, the Court must then determine whether or not the exercise of personal jurisdiction over defendant is consistent with due process. *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir.1982). The challenge to personal jurisdiction places the burden upon plaintiff to make a prima facie showing of jurisdiction. *Id.* at 653, n. 3. In determining whether the plaintiff has discharged his burden in this case, the Court will look to the face of his complaint, as well as his uncontroverted affidavit. The facts controlling the resolution of this jurisdictional dispute are basically undisputed.

In November of 1982, plaintiff was contacted by telephone by Arthur S. Kay, a licensed real estate broker in St. Louis, Missouri. Mr. Kay explained that he and David Renton, a licensed real estate broker in Connecticut, were engaged in an attempt to locate a purchaser for the Rodeway Inn in St. Louis. The purpose of Mr. Kay's telephone call was to solicit the plaintiff's assistance in accomplishing the sale of this Rodeway Inn in exchange for his agreement to share any commission with the plaintiff. Defendant owned Lodging Systems, Inc. which was the owner of the capital stock of Rodeway Redevelopment Corporation. Rodeway Redevelopment Corporation owned the Rodeway Inn in St. Louis. The plaintiff accepted Mr. Kay's offer and began to seek a purchaser for the motel.

Plaintiff located a prospective purchaser, Mr. Akbar Omar, a California resident. Mr. Akbar Omar's brother, Mr. Aaron Omar, acted as his agent in the negotiations. Mr. Aaron Omar lived in Little Rock, Arkansas during the period of time when negotiations were conducted for the purchase and sale of the St. Louis Rodeway Inn. Negotiations were conducted by plaintiff and Omar by telephone with the defendant's agent. When negotiations stalled, it was decided that rather than an asset sale, a stock transfer would take place. The Omar's Little Rock, Arkansas attorney then began preparation of a contract as negotiations via telephone and mail continued between the parties.

The purchase of the Rodeway Redevelopment Corporation capital stock by Akbar Omar was completed on September 23, 1983. Mr. Aaron Omar executed the contract in Little Rock, Arkansas as agent for Akbar Omar, and the defendant's agent, Norman Walker, executed the contract in Dallas, Texas. Defendant's agent, Mr. Walker, participated in the negotiation of the contract by telephone conference calls. He never physically appeared in Arkansas.

During negotiations a dispute arose as to the respective entitlement to commissions of Kay, Renton, and the plaintiff. Defendant caused $100,000 to be escrowed in a Russellville, Arkansas bank for the purposes of paying brokerage commissions on this transaction. Eventually plaintiff was sued by the other two brokers in state court in St. Louis, Missouri for allegedly interfering with their contractual right to receive the entire brokerage commission. This suit was compromised in a manner that allowed plaintiff to recover $25,000 of the $100,000 escrowed funds. Plaintiff alleges in this suit that he was entitled to a $50,000 brokerage commission. He seeks the $25,000 differences and the expenses and legal fees incurred in defending the Missouri action, as well as $100,000 in punitive damages.

That part of the long arm statute upon which plaintiff seeks to effectuate service and thereby sustain jurisdiction reads as follows:

C. Personal jurisdiction based upon conduct.

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in this state: ...

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State:

.  .  .  .  .

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.

Ark.Stat.Ann. § 27–2502 C(1)(a), (b) and (d) and C(2).

"[T]he Arkansas Supreme Court 'has held that the term "transacting business" is more inclusive than the earlier term "doing business" and that the legislative intention was to expand jurisdiction to the modern constitutional limit.' *E.g.*, *Wichman v. Hughes*, 248 Ark. 121, 450 S.W.2d 294, 296 (1970) (single contractual transaction), citing Currie, 'The Growth of the Long Arm': Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 533, 565 (Arkansas long-arm statute patterned after Illinois statute)." *Mountaire Feeds, Inc. v. Agro Impex, S.A., supra* at 653–54.

■ While plaintiff was initially contacted by the two other brokers and not directly by the defendant, it must be kept in mind that their contact with plaintiff was in behalf of the defendant. Once plaintiff located Akbar Omar as a prospective purchaser, defendant encouraged the plaintiff to assist in finalizing the transaction by contacting him in Arkansas. During the actual negotiations the defendant telephonically communicated with Omar's agent, Omar's local Little Rock attorney, and the plaintiff in the drafting of the agreement. Significantly, the contract of sale recites that it shall be governed by and interpreted by Arkansas law. While this may not be a forum selection clause such as found in *S.D. Leasing, Inc. v. Al Spain & Assoc.*, 277 Ark. 178, 640 S.W.2d 451 (1982), it may be considered with the other evidence of defendant's "transacting business" in Arkansas. Probably the strongest indicia of defendant's transacting business in Arkansas is the defendant's escrowing of funds in an Arkansas bank in an attempt to resolve the brokerage commission dispute. Additionally, the Court finds that plaintiff's cause of action arises from defendant's transacting business in this state as set forth above. Ark.Stat.Ann. § 27–2502 C(2). Finding that the defendant transacted business within the State of Arkansas, the Court will not address the issues of whether or not Ark.Stat.Ann. § 27–2502 C(1)(b) and (d) supply additional bases for *in personam* jurisdiction over the defendant.

Does the application of the Arkansas Long Arm Statute in the manner set forth above violate due process? For the following reasons, the Court finds that this question must be answered in the negative.

■ In order to satisfy due process, defendant must have sufficient minimum contacts with Arkansas "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Has the defendant purposefully availed "itself of the privilege of conducting activities within [Ark.], thus invoking the benefits and protection of its laws." *Hansen v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Cases confronting this issue have

focused on three primary factors: (1) quantity of contacts with forum state; (2) nature and quality of these contacts; (3) the source and connection of the cause of action with those contacts; and two secondary factors, (4) the interest of the forum state, and (5) the convenience or inconvenience to the parties. *See, e.g., Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965). The actions of this defendant in Arkansas (negotiating a brokerage agreement, negotiating a contract to sell stock which recited that Arkansas law would apply, establishing an escrow account with an Arkansas bank, *see, supra,* in Court's discussion of "transacting business") are of sufficient quantity and quality and of such a connection with Arkansas so as to not offend due process by asserting *in personam* jurisdiction over it. "The fact that the actual final execution of the contract may have been in [Texas], rather than in Arkansas, is immaterial." *Thompson v. Ecological Science Corp.,* 421 F.2d 467, 469 (8th Cir.1970) (citations omitted). As in *Thompson, supra,* "[the] defendant's activities in Arkansas were directed toward the consummation of the contract in question. An ordinarily insignificant contact with a State becomes significant when it gives rise to the claim involved in the lawsuit." *Id.* at 470 (citations omitted).

Additionally, Arkansas has an interest in providing a forum for one of its citizens to attempt to enforce the alleged contract, and the relative convenience of the parties and expected witnesses does not militate against Arkansas' serving as the forum state.

In accordance with the foregoing, the defendant's Motion to Quash Service and Dismiss is denied.