**FARMERS & MERCHANTS BANK,**
Trustee for Thomas C.
Johnston, IRA

v.

**HAMILTON HOTEL PARTNERS OF JACKSONVILLE LIMITED PARTNERSHIP,** a Massachusetts Limited Partnership; Hamilton Hotel Realty Corp., Hamilton Hotels, Inc. John A. Hammerle, III, Herman S. Eisenberg, J. Douglas Harding, Michael E. Recca, Morgan, Olmstead, Kennedy & Gardner, Inc.

Civ. No. 88–5136.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Dec. 16, 1988.

K.R. Lashlee, Scott, Lashlee & Watkins, P.A., Rogers, Ark., Mark W. Nichols, Yancey, Nichols & Wolff, P.A., Little Rock, Ark., for plaintiff.

Peter G. Kimpe, Wright, Lindsey & Jennings, Vincent Foster, Jr., Jess Askew, III, Vincent Foster, Jr., Rose Law Firm, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

There are presently pending before this court a number of motions and responses thereto. The court has reviewed the pleadings and the pending motions and is now prepared to rule. Each motion will be addressed separately.

### I. *Motion for Remand*

On August 4, 1988, plaintiff filed this cause of action in the chancery court of Benton County, Arkansas. The complaint in five counts alleged that the defendants had violated various sections of the Arkansas Securities Act and violation of the Securities Act of 1933. Plaintiff alleges these violations occurred in connection with the sale of limited partnership units in the Hamilton Hotel Partners I and Hamilton Hotel Partners II. Hamilton Hotel Part-

ners I is a limited partnership formed to purchase a Ramada Inn Hotel in Tampa, Florida (Hamilton I). Hamilton Hotel Partners of Jacksonville Limited Partnership was formed to purchase a hotel in Jacksonville, Florida (Hamilton II). *Defendants' Brief in Opposition of Remand* at 1. Plaintiff alleges that defendants, Hamilton Realty, Hamilton Hotel, Inc., Hammerle, Eisenberg, Harding, Recca, and AVI control Hamilton I and II.

Plaintiff states it is the trustee for the Thomas C. Johnston IRA. Plaintiff further alleges that the Thomas C. Johnston IRA is a self-directed individual retirement account in which Johnston has the authority to direct the investments of the account. *Complaint* at paragraph 14–16.

Mr. Johnston, acting as a representative for the Thomas C. Johnston IRA, purchased a partnership unit in each of the above mentioned partnerships. *Complaint* at paragraphs 17–18, 19–20. Plaintiff contends the investments in Hamilton Hotel Partners I and II are securities and that the sales of these interests violated the securities laws. Specifically the complaint alleges, in count one, violation of the registration requirements under the Arkansas Securities Act; in count two, violation of the disclosure requirements under the Arkansas Securities Act; in count three, violations of the registration and disclosure requirements of the Securities Act of 1933, 15 U.S.C. § 77a, in regard to the security evidenced by the unit in Hamilton Hotel Partners II; in count four, common law fraud and misrepresentation; in count five, the complaint alleges negligence against defendants, Morgan, Olmstead, Kennedy & Gardner, Inc. On September 7, 1988, the defendants filed a petition for removal stating as grounds that this court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Plaintiff has moved pursuant to 28 U.S.C. § 1447 to remand this case to the state court.

Plaintiff contends removal was improper under either subsection (a) or (c) of 28 U.S.C. § 1441. In support of its contention plaintiff points out that Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), precludes removal to federal courts of any case "arising under [the act]" and because no "separate and independent claim or cause of action" within the meaning of 28 U.S.C. § 1441(c) is joined with the non-removable securities claim.

Section 77v provides for concurrent jurisdiction over any cause of action under the Securities Act of 1933. 15 U.S.C. § 77v(a). However, removal is expressly prohibited by that same section which provides in part:

> No case arising under [the Securities Act of 1933] and brought in any state court of competent jurisdiction shall be removed to any court of the United States.

15 U.S.C. § 77v(a).

Removal based upon a federal question is provided for in Section 1441(a), 28 U.S.C. § 1441(a). However, that section expressly limits this authority to cases where Congress has not "expressly provided" otherwise. This is clearly a reference to statutes such as the one involved here where Congress has granted the plaintiff not only the right to file his action in state courts, but also the right to proceed to judgment in that court. *See for examples* 15 U.S.C. § 77v(a) (Securities); 28 U.S.C. § 1445(c) (actions arising under state workmen's compensation laws); 28 U.S.C. § 1445(a) (certain actions against railroads); 45 U.S.C. § 51 *et seq.* (Federal Employers' Liability Act). In light of the incorporation of the statutory removal prohibition into Section 1441(a), there is no question that removal is not allowable under subsection (a).

Therefore, if this case is removable at all it must be under the provisions of Section 1441(c) which provides:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and this district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c).

This case would clearly have fallen within the removal provisions of Section 1441(a)

but for the nonremovable securities claim since the complaint alleged the requisite diversity of citizenship and jurisdictional amount. As discussed above, however, this section is inapplicable because Congress has explicitly prohibited removal of claims under the Securities Act of 1933.

■ The question before the court then is whether Section 77v in effect overrides the general removal provision in Section 1441(c) and prevents removal of the securities claim even when joined with a "separate and independent" removable claim. *See generally* 14A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* §§ 3724 at 408, 3729 at 494 (1985). When a special statute bars removal it creates a conflict with Section 1441(c). "Section 1441(c) reflects the congressional judgment that plaintiff's joinder of separate and independent claims, one of which is non-removable, should not destroy a defendant's right to removal." *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020, 1022 (2d Cir.1984). However, Section 77v evidences Congressional intent to provide the plaintiff with a choice-of-forum privilege. The question, therefore, is, as one court phrased the inquiry, "where Congress intended the right granted a [1933 Securities Act] claimant to cease and the protection granted defendants to commence." *U.S. Industries, Inc. v. Gregg*, 348 F.Supp. 1004, 1015 (D.Del.1972), *rev'd on other grounds*, 540 F.2d 142 (3d Cir.1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977).

The conflict between the statutory policies evident in anti-removal statutes and the general removal statute has been explored by some courts. Most courts that have directly addressed the issue have determined that Section 1441(c) takes precedence and permits removal despite the statutory prohibition. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1197 (9th Cir.1988); *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020, 1023–26 (2d Cir.1984); *Cacioppe v. Superior Holsteins III, Ltd.*, 650 F.Supp. 607 (S.D.Tex.1986); *Kinsey v. Nestor Exploration Ltd.—1981A*, 604 F.Supp. 1365 (E.D.Wash.1985); *Abing v. Paine,*

*Webber, Jackson & Curtis*, 538 F.Supp. 1193, 1197 (D.Minn.1982); *Hages v. Aliquippa & Southern R. Co.*, 427 F.Supp. 889 (W.D.Pa.1977); *Armstrong v. Monex International, Ltd.*, 413 F.Supp. 567 (N.D. Ill.1976); *Milton R. Barrie Co. v. Levine*, 390 F.Supp. 475 (S.D.N.Y.1975); *U.S. Industries, Inc. v. Gregg*, 348 F.Supp. 1004 (D.Del.1972); *Meinerz v. Harding Bros. Oil & Gas Company*, 343 F.Supp. 681 (E.D.Wis.1972); *Korber v. Lehman*, 221 F.Supp. 358 (S.D.N.Y.1963).

As one court concluded:

[15 U.S.C. § 77v] restricts the grant of general removal jurisdiction found in Subsection (a). However, in a case where a separate and independent claim, which would be removable if sued upon alone, is joined with one or more otherwise removable claims, whether made non-removable by Section [77v] or otherwise, Subsection (c) is the governing provision and authorizes removal of the entire case.

*U.S. Industries, Inc. v. Gregg*, 348 F.Supp. 1004, 1015–16 (D.Del.1972). Accordingly, the entire case is removable if the complaint states another cause of action that would otherwise be removable and is separate and independent within the meaning of Section 1441(c).

It is the status of plaintiff's complaint at the time that the removal petition is filed that controls in making the determination whether the claims are separate and independent. *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Bull v. Greenwood*, 610 F.Supp. 874 (W.D.Ark.1985). In *American Fire & Casualty Co. v. Finn, supra*, the Supreme Court made clear "that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action...." *American Fire & Casualty*, 341 U.S. at 14, 71 S.Ct. at 540. Accordingly, claims or causes of action are not "separate and independent" under 28 U.S.C. § 1441(c) if they are based upon a single wrong and arose out of one set of operative facts. *Bull v. Greenwood*, 610 F.Supp. 874 (W.D.Ark.

1985); *Strange v. Arkansas–Oklahoma Gas Corp.*, 534 F.Supp. 138 (W.D.Ark. 1981).

■ In this case the issues involve the sale of limited partnership units in two separate entities which were in turn set up to purchase two separate hotels. The issues before the court are whether the sale of each of these units violated the applicable securities laws and created certain common law causes of action. In making these determinations, the court will need to examine each sale separately and examine numerous factors with regard to the units sold in each partnership. It appears clear to the court that with regard to the sale of units in two different partnerships each has its own set of "wrongs" or "operative facts." Therefore, the entire case is removable pursuant to § 1441(c) and is properly before this court.

II. *Defendant, Morgan, Olmstead, Kennedy and Gardner, Inc.'s Motion to Dismiss*

The defendant contends Count I alleging various registration violations of the Arkansas Securities Act fails to state a claim for which relief can be granted because the complaint shows on its face that the transactions were exempt from registration under Ark.Code Ann. § 23–42–504(a)(8). This provision contains an exemption for "institutional buyers" and provides:

> Any offer or sale to a bank, savings institution, trust company, insurance company, investment company as defined in the Investment Company Act of 1940, pension or profit-sharing trust, or other financial institution or institutional buyer, or to a broker-dealer, whether the purchaser is acting for itself or in some fiduciary capacity. The commissioner may by order, upon petition by any person, determine if the petitioner may be deemed, upon the basis of knowledge, experience, volume, and number of transactions, and other securities background, an "institutional buyer" for purposes of this subdivision.

Ark.Code Ann. § 23–42–504(a)(8) (1987).

It is not necessary to file a proof of exemption for claimed exemptions under this subsection. Ark.Code Ann. § 23–42–504(b)(1) (1987). However, as with all exemptions, the burden of proving the exemption is upon the person claiming it. Ark.Code Ann. § 23–42–506 (1987).

The defendant contends that "since the complaint alleges that the two limited partnership interests were bought by the plaintiff, Farmers and Merchants Bank, as trustee for the Johnston IRA, it is clear that the complained-of transaction was exempt from registration...." In response, plaintiff contends "in order for the exemptions in Ark.Code Ann. § 23–42–504 to make sense, 'transaction' should not be defined as a single sale of securities to a single purchaser, but rather 'transaction' should be defined in terms of the offering of the securities as a whole." Under plaintiff's reasoning, all sales of the limited partnership interests would have to be limited to institutional buyers before the exemption could be claimed.

The court cannot adopt plaintiff's strained interpretation of the word, transaction. The Arkansas Securities Act, as with most security laws, provides for exempt securities and exempt transactions. Ark.Code Ann. §§ 23–42–503, 23–42–504 (1987). Under the former, the security itself is exempt from registration; the latter exempts certain transactions. Transaction is defined as "an act, process, or instance of transacting." Webster's Third New International Dictionary (1981). Accordingly, an isolated transaction may be exempt if it falls within the particular exemption asserted. *See generally* 69 Am.Jur.2d, *Securities Regulation—State* § 79–85.

However, the court believes the defendant's claimed exemption must fail for another reason. It is not clear on the face of the pleadings that an "institutional buyer" was involved in the challenged transactions. The complaint asserts that Thomas C. Johnston acting as a representative of the Thomas C. Johnston IRA made the purchases in question. Farmers and Merchants Bank, although admittedly the trustee for the IRA, was not directly involved in the transaction. The IRA in

question is referred to as a self-directed individual retirement account in which Johnston, not Farmers and Merchants Bank, has the authority to direct the investments.

As the language of the exemption itself indicates, the "institutional buyer" exemption applies to those entities which, because of basis of knowledge, experience, volume, number of transactions, and other securities background, are deemed to be more sophisticated in transactions of this kind and therefore, less in need of the protection of the securities act. Legislative regulation of securities transactions is "based upon recognition of the fact that the great majority of the public lacks knowledge and sophistication in the area of securities investment, that many members of [the] general public are potentially easy prey for promoters of worthless securities or securities of doubtful value, and, therefore, that the primary purpose of the blue sky laws is the general welfare and protection of the public from deceit and fraud in securities transactions." 69 Am.Jur.2d, *Securities Regulation—State* § 1 at 1059.

■ The purposes of the securities statutes would not be furthered in this instance by allowing the exemption claimed by defendant. Mr. Johnston, himself, and not the bank directs the investment of the IRA. There is no indication that he was aided in any manner by the bank or its officials. Mr. Johnston, himself, exercised the investment discretion involved in the present transactions. Mr. Johnston is not an "institutional buyer" within the meaning of Ark. Code Ann. § 23–42–504(a)(8).

■ Next, defendant argues that Count II fails to state a claim under Ark.Code Ann. § 23–42–106(a)(1)(B), because it does not allege scienter against defendant, Morgan. As plaintiff correctly notes, scienter is not required under Ark.Code Ann. § 23–42–106(a)(1)(B). Misrepresentations or omissions under the Arkansas blue-sky law are actionable if either intentionally or negligently made. *See Vanderboom v. Sexton,* 422 F.2d 1233, 1238–39 (8th Cir. 1970) *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Lane v. Midwest*

*Bancshares Corp.,* 337 F.Supp. 1200, 1208 (E.D.Ark.1972).

■ In connection with plaintiff's allegations of fraud and misrepresentation contained in Counts II, III, and IV, defendant contends those counts fail to state the circumstances constituting fraud with sufficient particularity. Fed.R.Civ.P. 9(b). Although conclusory allegations that a defendant's conduct was fraudulent and deceptive are not enough to satisfy Rule 9(b), it is sufficient for a claimant to set forth the time, place and circumstances of the alleged fraudulent activities. *Antinore v. Alexander & Alexander Services, Inc.,* 597 F.Supp. 1353 (D.Minn.1984). The obligation to plead circumstances constituting fraud should not be treated as requiring allegation of facts in the pleading. *Securities and Exchange Comm'n v. Tiffany Industries,* 535 F.Supp. 1160 (E.D.Mo.1982). The test of pleading under Rule 9(b) is whether the pleading gives fair notice of the claims asserted and the basic transactions upon which the claims are based. *Burns v. Ersek,* 591 F.Supp. 837 (D.Minn. 1984). *See generally* 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1300.

Based upon a review of the complaint, the court is satisfied that the complaint adequately apprises defendant of the time, place, and circumstances of the activities which allegedly constitute fraud. This is particularly true when, as here, the alleged fraud is for the most part based on failures to disclose.

The defendant contends that Count III insofar as it alleges violations of § 12(1) and § 12(2), 15 U.S.C. § 77*l* (1) and (2), of the 1933 Act is barred by the one year statute of limitations contained in § 13, 15 U.S.C. § 77m of the act. The plaintiff basically concedes that the complaint was not filed within one year after the violation upon which it is based but contends that the claim is not time barred because it was filed within the three year statute of limitations contained in 15 U.S.C. § 77m. In addition plaintiff argues that its 1933 Act cause of action is based both on § 17, 15

U.S.C. § 77q, and § 12, 15 U.S.C. § 77*l* (1) and (2).

Section 12(1) provides a cause of action for violation of the registration requirements of the 1933 Act. The applicable statute of limitations for Section 12(1), appears in Section 13, 15 U.S.C. § 77m, which requires an action to enforce liability to be brought "within one year after the violation upon which it is based" but "in no event" shall such action be brought "more than three years after the security was *bona fide* offered to the public." 15 U.S.C. § 77m. "The one and three years limitations periods are not meant to be read alternatively, but cumulatively." *Stone v. Fossil Oil & Gas*, 657 F.Supp. 1449, 1456 (D.N.M.1987).

In *LeCroy v. Dean Witter Reynolds*, the court concluded as a matter of law that:

> [T]he one and three-year limitations periods contained in Section 13 are cumulative, not alternative. *See Osborne v. Mallory*, 86 F.Supp. 869, 873–74 (S.D.N.Y.1949); [L. Loss *III Securities Regulation*,] Ch. II(c)(1)(f)(i) at p. 1742, n. 188. Therefore, the plaintiff must be able to demonstrate not only that she filed her action within one year of the section [12(1) ] violation, but also that the filing occurred within three years after the securities were first bona fide offered to the public. If she fails to meet either limitation period, her cause of action is time-barred.

*LeCroy v. Dean Witter Reynolds, Inc.*, 585 F.Supp. 753 (E.D.Ark.1984). Plaintiff concedes the allegations in Count III involve actions which occurred in October of 1985. Accordingly, since plaintiff's action is untimely under the one-year limitations period, the alleged compliance with the three-year period is irrelevant.

Section 12(2), 15 U.S.C. § 77*l* (2), provides a private right of action against any person who offers or sells a security by the use of any means of interstate commerce by means of a prospectus or oral communication which includes an untrue statement of material fact or omits to state material facts. Section 12(2) is aimed at and punishes fraudulent conduct. *Stone v. Fossil Oil*

*& Gas*, 657 F.Supp. 1449, 1457 (D.N.M. 1987). The applicable statute of limitations appears in Section 13, 15 U.S.C. § 77m, and requires an action to enforce liability to be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence...." 15 U.S.C. § 77m.

Defendants alleged liability under § 12(2) is based on the material omissions or misrepresentations in the offer and sale of securities. Plaintiff states the allegations in Count III involve actions which occurred in October of 1985 and makes no argument that the fraudulent concealment doctrine should be applied. *See Stone v. Fossil Oil & Gas*, 657 F.Supp. 1449, 1457 (D.N.M.1987); *Baden v. Craig–Hallum, Inc.*, 646 F.Supp. 483, 487 (D.Minn.1986); *LeCroy v. Dean Witter Reynolds, Inc.*, 585 F.Supp. 753, 759 n. 3 (E.D.Ark.1984). Therefore, plaintiff's claim under § 12(2) is untimely.

Plaintiff argues that its cause of action should be allowed to proceed under § 17(a), 15 U.S.C. § 77q(a). Section 17(a) makes it unlawful for one to employ fraudulent or deceptive devices in connection with the sale of securities. *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 155 (8th Cir.1977) *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). However, the established rule in this circuit is that it does not confer a private right of action in favor of a person who purchases a security that has been sold to him in violation of the section. *Deviries v. Prudential–Bache Securities, Inc.*, 805 F.2d 326, 328 (8th Cir.1986). Accordingly, plaintiff cannot rely on Section 17. Therefore, the allegations in Count III are time barred.

The defendant next contends that that portion of Count V alleging negligence against it with respect to the Hamilton I transaction is time barred. According to the complaint the Hamilton I transaction took place on June 12, 1985, when an initial installment was made and a promissory note executed for the balance thereof. In its response plaintiff urges the court to

1424

apply the five year statute found in Ark. Code Ann. § 16–56–115 rather than the three year limitation period found in Ark. Code Ann. § 16–56–105. It is well established that the three year statute applies to all tort actions. *Burton v. Tribble*, 189 Ark. 58, 70 S.W.2d 503 (1934). Therefore, plaintiff's allegations of negligence with respect to the Hamilton I transaction are time barred.

### III. *Defendant, Morgan, Olmstead, Kennedy & Gardner, Inc.'s Motion to Compel Arbitration of State Claims*

On January 2, 1985, Thomas C. Johnston entered into an account agreement with defendant which provided in paragraph 16:

The undersigned [Thomas C. Johnston] understands that all controversies which may arise between us concerning any transaction, or the construction, performance, or breach of this or any agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be settled by arbitration, in accordance with the rules of the American Arbitration Association, except that the undersigned is not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead may resolve any such dispute or controversy through litigation in the courts.

The contract states further that its provisions "shall cover individually and collectively all accounts which the undersigned may open or reopen ... and shall be binding upon the undersigned, and/or the estate, executors, administrators and assigns of the undersigned." *Account Agreement* paragraph 18.

Mr. Johnston opened two trading accounts with Morgan. Account number 036–13087 was opened prior to the execution of the account agreement in the name of Dr. Thomas C. Johnston. Account number 036–13125 was opened in the name of Delaware Charter Guarantee & Trust Company, as trustee for the benefit of the Thomas C. Johnston IRA account. The court notes plaintiff has in the interim apparently assumed the position of trustee for the IRA.

The defendant has now asked the court to compel plaintiff to submit its state law claims to arbitration and to stay all claims pending arbitration. Defendant contends the arbitration agreement is binding upon plaintiff, a non-signatory.

The defendant draws an analogy from the situation at hand, *i.e.* a self-directed IRA, to where an individual utilizes a corporation as a mere instrumentality citing *Farkar Co. v. R.A. Hanson DISC., Ltd.,* 583 F.2d 68 (2d Cir.1978). In essence defendant argues that for all practical purposes Mr. Johnston and the IRA are identical. In response plaintiff admits there was an account agreement but states the contract was entered into by Thomas C. Johnston in his personal and individual capacity. Plaintiff further asserts that this agreement doesn't cover the account opened in the name of the trustee.

Arbitration clauses have been favored by the judiciary for many years as an alternate mode of dispute resolution. Under the United States Arbitration Act, codified at 9 U.S.C. § 1 *et seq.*, Congress has created a body of federal substantive law of "arbitrability" which must be applied in all cases including those asserting federal court jurisdiction solely on diversity of citizenship. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

The Act applies to two types of contracts, namely those in admiralty or those evidencing transactions in commerce. 9 U.S.C. § 1 *et seq.; Prima Paint, supra.* Section 2 provides in pertinent part that "a written provision in any ... contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act further provides parallel devices for seeking the enforcement of arbitration clauses. Section 3 requires a federal court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the

court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement. 9 U.S.C. § 3; *Prima Paint, supra.* Section 4 provides a method under which a party aggrieved by the failure or refusal of the other party to arbitrate may petition the federal court for an order compelling arbitration. 9 U.S.C. § 4.

The first step then is to determine whether the contract in question falls within the reach of the Act, *i.e.,* is it a contract evidencing transactions in commerce? Section 1 defines "commerce" to include "commerce among the several states or with foreign nations, or in any Territory of the United States or in the District of Columbia." 9 U.S.C. § 1. An examination of the agreement leads the court to conclude that it clearly involves interstate commerce within the meaning of the Act.

The Eighth Circuit has provided a framework for analyzing the "arbitrability" of a case. The analysis addresses three issues: (1) whether there exists a valid agreement to arbitrate; (2) whether the subject matter of the dispute is covered by the agreement; and if so, (3) whether there has been a breach of the agreement. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286, 1288 (8th Cir.1984), *citing Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370 (8th Cir.1983); *National Railroad Passenger Corp. v. Missouri Pacific Railroad,* 501 F.2d 423, 427 (8th Cir.1974).

The dispute here centers around the first of the three issues. The trustee contends as a non-signatory it cannot be bound by the agreement signed by Mr. Johnston. Whether a non-signatory can or should be forced to arbitrate is determined by resort to ordinary contract principles. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). In making this decision it must be kept in mind that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

A non-signatory to a contract containing an arbitration clause may come to be governed by such a provision. *See In re Oil Spill by Amoco Cadiz, Etc.,* 659 F.2d 789, 795–96 (7th Cir.1981); *Fisser v. International Bank,* 282 F.2d 231 (2d Cir.1960). "[T]he variety of ways in which a party may become bound by a written arbitration provision is limited only by generally operative principles of contract law." *Id.* at 233. "It is not decisive that such persons are not literally covered by the terms of the arbitration clause." *Wells Fargo Bank v. London S.S. Owners' Mut. Ins.,* 408 F.Supp. 626, 629 (S.D.N.Y.1976) citing *Lumbermens Mutual Casualty Co. v. Borden Co.,* 268 F.Supp. 303, 313–14 (S.D.N.Y.1967). *See also* 9 U.S.C. § 2 n. 95 and cases cited therein.

In light of the foregoing, the court turns to an analysis of the circumstances of this case to determine whether the trustee may be bound. As noted above, the arbitration agreement applied to all accounts Mr. Johnston "may open or reopen." Subsequent to his signing the agreement, Mr. Johnston established a second account in the name of Delaware Charter Guarantee & Trust Company, as trustee for the benefit of Thomas C. Johnston IRA account. Thereafter Johnston acting as a representative for the trustee purchased the partnership units in question.

Plaintiff has alleged an agency relationship was in existence at the time the IRA account was opened. Having done so, plaintiff now seeks to argue that when the arbitration agreement was signed by Mr. Johnston he was acting solely in his personal capacity. At all times Mr. Johnston has pursuant to his "self-directed IRA" exercised business discretion and directed all investments for the IRA. Plaintiff does not even argue that Johnston made clear he was acting only as a representative of the IRA when he opened the second account. The defendant would have had no reason to suspect a second account agreement was necessary. It would advance neither judicial economy nor the purposes of the federal arbitration act to allow the plaintiff to disavow the relationship. Mr.

Johnston and the IRA act as one. Accordingly, arbitration of the remaining claims against defendant, Morgan, is appropriate.

IV. *Motion to Dismiss of Defendants, Hamilton Hotel Partners of Jacksonville Limited Partnership, Hamilton Hotel Realty Corp., Hamilton Hotels, Inc., John A. Hammerle, III, Herman S. Eisenberg, J. Douglas Harding, and Michael E. Recca*

The defendants have moved to dismiss for lack of personal jurisdiction over the individuals in the partnership and lack of personal jurisdiction over the partnership itself. The "facts" necessary for a determination of the issues raised by the motion to dismiss are not in dispute, or at least are not controverted. The partnership units were sold through Morgan, Olmstead, Kennedy & Gardner, Inc., a California corporation which acted as the broker-dealer for the sale of these interests. Mr. Johnston, an Arkansas resident (then acting as representative for the Thomas C. Johnston IRA), was contacted by Mr. S. Douglas Goss on behalf of Morgan Olmstead. Mr. Goss solicited the purchase by the Thomas C. Johnston IRA of certain units in the Hamilton Hotel Partnerships. Subsequently, Mr. Johnston received a letter dated October 25, 1985, from J. Douglas Harding a general partner in the Hamilton Hotel Partnership of Jacksonville Limited Partnership outlining the terms under which Mr. Johnston agreed to make the equity investment. No other contacts are alleged. The parties disagree over whether these are sufficient contacts to subject the general partners and the partnership to the *in personam* jurisdiction of this court.

Jurisdiction over the defendants is premised on the Arkansas long-arm statute, Ark.Code Ann. § 16–4–101 (1987). The part of the long-arm statute upon which plaintiff relies reads as follows:

C. PERSONAL JURISDICTION BASED UPON CONDUCT.

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's (a) transacting any business in this State;

\* \* \* \* \* \*

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.

Ark.Code Ann. § 16–4–101C(1)(a) and C(2) (1987).

The Arkansas Supreme Court has stated the purpose of the Arkansas long-arm statute "is to allow such personal jurisdiction over non-residents as is allowed by the due process clause of the United States Constitution." *Kilcrease v. Butler*, 293 Ark. 454, 739 S.W.2d 139 (1987); *S.D. Leasing v. Al Spain and Associates*, 277 Ark. 178, 640 S.W.2d 451 (1982). "[T]he Arkansas Supreme Court has held that the term 'transacting business' is more inclusive than the earlier term 'doing business' and that the legislative intention was to expand jurisdiction to the modern constitutional limit." *McMahen v. Paramount Holdings, Inc.*, 604 F.Supp. 1099, 1101 (E.D.Ark.1985) citing *Wichman v. Hughes*, 248 Ark. 121, 450 S.W.2d 294, 296 (1970).

Thus, the court must apply a two-part test to determine if the defendants are properly before the court. First, the court must determine whether the facts of the case satisfy the statutory requirements of the long-arm statute; and second, the court must decide whether the exercise of personal jurisdiction is consistent with the due process clause and the standards established in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("traditional notions of fair play and substantial justice"), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (defendant must have entered the forum with business purposes sufficient to invoke "the benefits and protection of its laws"). In making this second determination the Eighth Circuit has determined satisfaction of the due process standard may be measured by weighing the following factors: the nature and quality of defendant's contacts with the forum state; quantity of contacts; source and

connection of the cause of action with those contacts; and, to a lesser degree, interest of the forum State and convenience. *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir.1965); *First Nat. Bank of Minneapolis v. White*, 420 F.Supp. 1331, 1334 (D.Minn.1976).

The court is convinced that the defendants have transacted business within the meaning of the long-arm statute. The defendants have marketed their product to an Arkansas resident. The partnerships were apparently formed for the limited purpose of obtaining enough investors to purchase two separate motels. To do so, the partners through their broker-dealer solicited the purchase of these partnerships interests in Arkansas by an Arkansas resident. The long-arm statute allows the court to exercise jurisdiction over one who acts directly or by an agent. The actions of the agent are imputed to the principal and subject the principal to jurisdiction on the basis of contact with the forum. *Williams v. General Motors Corp.*, 573 F.Supp. 577, 579 (E.D.Ark.1983); *First National Bank of Minneapolis v. White*, 420 F.Supp. 1331, 1336 (D.Minn.1976). There is no doubt on the facts herein that there is a direct relationship between defendants' connection with Arkansas and the injury complained of.

Defendants argue that should the court find *in personam* jurisdiction is proper over the partnership, the individual partners are not subject to jurisdiction in personam. Defendants cite, in support of their position, *Williams v. General Motors Corp.*, 573 F.Supp. 577 (E.D.Ark.1983), and *First National Bank of Minneapolis v. White*, 420 F.Supp. 1331 (D.Minn.1976). Neither of these cases support their position. In the *Williams* case, the court was asked to determine whether it could exercise jurisdiction over an agent by virtue of the principal's contacts. *Williams*, 573 F.Supp. at 579. The court found no support for this proposition but noted:

It is true that [16–4–101(c)(1) ] allows the Court to exercise jurisdiction over one who acts directly, or by an agent, but this provision would only enable the Court to exercise jurisdiction over the principal on whose behalf the agent acted, based upon the conduct of the agent as it falls within the provisions of the Long Arm Act.

*Williams*, 573 F.Supp. at 579.

In *First National v. White*, the plaintiff argued that the service on a partnership brings all the partners individually within the Court's jurisdiction despite the fact that the individual partners were not properly served. *First Nat. Bank of Minneapolis v. White*, 420 F.Supp. at 1337. The Missouri statute in question provided that proper service on one member of a partnership is sufficient to give jurisdiction over the partnership itself. In light of this, the court held jurisdiction was not proper "when the individual in question has had no personal contacts with the State, particularly when plaintiff's interest in bringing him to the forum may be satisfied simply by establishing liability of the partnership in which he is a member." *Id.* at 1337.

However, as plaintiff correctly points out this is not the case in Arkansas. Arkansas still retains the common law "aggregate" theory. Under this theory the partnerships itself cannot be sued as an entity. In Arkansas a partnership is sued by naming the general partners. *Pate v. Martin*, 13 Ark.App. 182, 681 S.W.2d 410 (1985).

Due process requires that the defendant have sufficient minimum contacts with Arkansas such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This test is met if the defendant has purposely availed "itself of the privilege of conducting activities within [Arkansas], thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Applying the factors set out in *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir.1965), the court finds the actions of the defendants in Arkansas to be of sufficient quantity and quality and of such a connection with Arkansas so as to not offend due

process. As noted above, the defendants through their agent solicited business from an Arkansas resident who then became the owner of a limited partnership interest. The defendants cannot by the mere delegation of authority insulate themselves from suit in Arkansas. For these reasons, the defendants will not be dismissed.

A separate order in accordance herewith will be concurrently entered.