**UNITED ACCOUNTS, INC., Bismarck, North Dakota, Plaintiff and Appellee,**

v.

**Daniel QUACKENBUSH, Defendant and Appellant.**

**Civ. No. 880118.**

Supreme Court of North Dakota.

Jan. 9, 1989.

William C. Severin, Bismarck, for plaintiff and appellee.

Daniel Quackenbush, Lompoc, Cal., pro se.

ERICKSTAD, Chief Justice.

Daniel Quackenbush appeals from a district court judgment holding him liable to United Accounts, Inc. [United], for $2,554.28. We affirm in part, reverse in part, and remand for further proceedings.

On July 27, 1984, Quackenbush applied for Mastercard and Visa credit cards from First of Omaha Service Corporation. At that time, Quackenbush lived in Killdeer and had been employed with the Dunn County Sheriff's Department since April 15, 1982. Quackenbush remained employed with the Sheriff's Department and was a resident of Dunn County until January 6, 1987. The record reflects that purchases were made in North Dakota with both credit cards before Quackenbush ultimately moved to Lompoc, California.

In April 1987, First of Omaha Service Corporation assigned its claims against Quackenbush for unpaid credit card purchases to United, which brought this action to collect $625.79 allegedly owed on his Mastercard account and $1,228.57 allegedly owed on his Visa account, along with interest. An amended summons and complaint were served upon Quackenbush by certified mail on May 14, 1987 in Lompoc.

Quackenbush responded by serving United with a notice of special appearance and a motion to dismiss, asserting that the district court lacked personal jurisdiction over him because he was a California resident.

On July 14, 1987, United served Quackenbush with a note of issue and certificate of readiness which stated that all pretrial motions had been disposed of, that the case was ready for trial as a bench trial, and that all pleadings of the filing attorney had been filed with the clerk of court. Quackenbush then filed with the court his notice of special appearance, the motion to dismiss, a certificate of nonreadiness, and other materials. Quackenbush asserted in the certificate of nonreadiness that his pretrial motion had not been disposed of, that the case was not ready for a bench trial because he wanted a jury trial, and that his response "is being made specially and not generally and defendant does not submit himself to the jurisdiction of this court, but only to preserve his rights on appeal if that becomes necessary." Quackenbush also argued to the court that the reason he had not filed an answer or counterclaim against United was because the court had not yet ruled on his motion to dismiss.

On August 17, 1987, the court denied Quackenbush's motion to dismiss. In its order, the court further stated:

"[B]ecause the Defendant is not represented by an attorney licensed to practice law within the State of North Dakota and may not have known of his obligation to file timely an Answer or other appropriate response to the Complaint, the Court in the exercise of its discretion and on its own Motion Orders as follows:

"1. The Defendant will be allowed 20 days from the date hereof within which to file an Answer asserting whatever defenses he may have to the allegations in the Complaint.

"2. The Defendant will not be permitted to file any counterclaim or a demand for jury trial, the time for exercise of both of those rights has long since passed."

Quackenbush filed an answer in which he again claimed the trial court had no personal jurisdiction over him. The answer also objected to the trial court's refusals to allow him to demand a jury trial and file a counterclaim against United. The answer did not address the merits of United's action against him. Quackenbush did not appear at the bench trial, which was held on February 12, 1988. The trial court concluded that it had jurisdiction over the parties to the action, finding "[t]hat the accounts which form the basis of this action were contracted for and incurred by the defendant or charged against his accounts with his permission in Dunn County, North Dakota, while he was a resident of Dunn County...." The court further found that "no payments or other credits have been made by the defendant against the accounts...." Judgment was entered against Quackenbush in the amount of $2,554.28. Quackenbush has appealed, asserting that the trial court lacked personal jurisdiction over him and that the trial court erred in refusing to allow him to file a demand for jury trial and a counterclaim.

## PERSONAL JURISDICTION

■ Quackenbush asserts that the trial court lacked personal jurisdiction over him because he is not a North Dakota resident and was not "found within" North Dakota as required by Rule 4(b)(1), N.D.R.Civ.P. United asserts that the trial court properly exercised personal jurisdiction because Quackenbush, by using the credit cards in this state while he was a resident, was effectively transacting business in this state within the meaning of Rule 4(b)(2)(A), N.D.R.Civ.P. We agree with United.

Rule 4(b)(2)(A), provides:

"(2) *Personal Jurisdiction Based Upon Contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play

or the due process of law, under one or more of the following circumstances:

"(A) transacting any business in this state;"

Rule 4(b)(2), North Dakota's "long-arm" provision, is a codification of the principles announced in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in which the United States Supreme Court held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" [Quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)]. Rule 4(b)(2) was "designed to permit the state courts to exercise personal jurisdiction to the fullest extent permitted by due process." *Hebron Brick Co. v. Robinson Brick & Tile Co.*, 234 N.W.2d 250, 255 (N.D.1975) (footnote omitted).

In *Hust v. Northern Log, Inc.*, 297 N.W. 2d 429, 431 (N.D.1980), we noted that a two-fold inquiry is required to resolve a question of personal jurisdiction under this rule:

"First, it must be determined if the requirements of the applicable subparagraphs contained in Rule 4(b)(2), N.D.R. Civ.P., have been satisfied. Secondly, it is necessary to determine whether or not the nonresident party has had such contact with the forum State that the exercise of personal jurisdiction over the nonresident does not offend against the traditional notions of justice and fair play under the concept of due process of law."

Therefore, we first consider whether Quackenbush's use of the credit cards in the state while a resident can be considered "transacting any business in this state." The language of Rule 4(b) was adapted from the long-arm proposals contained in the Uniform Interstate and International Procedure Act, 13 U.L.A.Civ.Proc. and Rem.Laws § 1.03, at p. 361–362 (1986). *See* Explanatory Note to Rule 4, N.D.R. Civ.P., North Dakota Court Rules at p. 18

(West 1988); *Hebron Brick Co. v. Robinson Brick & Tile Co., supra.* According to the Comment to the Uniform Act, the "transacting any business in this state" provision should be given an "expansive interpretation" by the courts. 13 U.L.A. Civ.Proc. and Rem.Laws, *supra,* at p. 362.

The Louisiana Court of Appeals' decision in *Sears, Roebuck & Co. v. Ballard,* 517 So.2d 233 (La.Ct.App.1987), is instructive. In *Ballard,* the plaintiff brought a suit in Louisiana to recover $2,532.20 for the nonpayment of the defendant's Sears charge account. The defendant applied for and was granted credit in December 1982 and made numerous purchases and payments to the account up until April 1985. The defendant had been a resident of Louisiana until August 1985 when he moved to Texas. The suit was filed in Louisiana in March 1986 and the plaintiff claimed personal jurisdiction over the defendant based upon the Louisiana long-arm statute which similarly permitted the court to exercise personal jurisdiction over a nonresident as to a cause of action arising from the nonresident "transacting any business in this state." *Ballard, supra,* 517 So.2d at 235. The trial court found the defendant's credit transactions insufficient to constitute transacting business in the state.

The appellate court reversed, concluding that "transacting any business in this state" could encompass the defendant's use of the credit card under the circumstances presented "where numerous purchases were made over a three-year period in the state where the defendant resided." *Ballard, supra.* The court further concluded that the defendant's due process rights would not be violated because "[c]learly, the many credit purchases and payments made by the defendant established 'minimum contacts' with Louisiana, and he should reasonably have anticipated being haled into a Louisiana court in the event of an alleged default in payment." *Ballard, supra,* 517 So.2d at 236.

We find *Ballard* persuasive in this case. Although Quackenbush asserts that the credit card issuer was the only party actually transacting business in the state, and

that he could not be found to be transacting business unless it was shown he used the credit cards for his business purposes, *i.e.,* law enforcement, we believe this argument attempts to impose an unwarranted restriction on the meaning of "transacting any business in this state," contrary to the expansive interpretation intended by the provision's drafters. "Transacting business" is a much broader concept than that envisioned by the earlier restrictive term "doing business." *E.g., Wichman v. Hughes,* 248 Ark. 121, 450 S.W.2d 294, 296 (1970). Moreover, Quackenbush's argument would lead to the illogical conclusion that while a seller of goods transacts business through a sale, the buyer of those same goods is not transacting business through the purchase. *Cf. Harry Winston, Inc. v. Waldfogel,* 292 F.Supp 473, 481–482 (S.D.N.Y.1968). We conclude that Quackenbush's use of the credit cards falls within the ambit of "transacting any business within this state" under Rule 4(b)(2)(A), N.D.R.Civ.P.

■ We further hold that the exercise of jurisdiction under the circumstances of this case does not offend against traditional notions of fair play and substantial justice and therefore comports with the requirements of the due process clause. The record contains an affidavit from the Dunn County Auditor which establishes that Quackenbush resided in Dunn County from April 15, 1982 through January 6, 1987, which encompasses the time period the credit card purchases were made. The record also contains Quackenbush's application for the credit cards which was executed on July 27, 1984, while he was living in Killdeer, as well as account statements showing that purchases were made in North Dakota through the use of both the Mastercard and Visa charge cards while he resided in the state. Quackenbush admitted that he "was a resident of North Dakota during the alleged 'transactions' mentioned in the Complaint," and has offered no evidence, by affidavit or otherwise, to dispute that he used the credit cards or that the transactions occurred in North Dakota.

We believe these circumstances make it reasonable for a North Dakota court to exercise jurisdiction. By residing and using the credit cards in this state, Quackenbush chose to invoke the protections and benefits of North Dakota law. These connections with the state are such that he should have anticipated that he could be sued here. Furthermore, his residency and physical presence while taking these actions give North Dakota an interest in adjudicating this dispute. Accordingly, we conclude that the trial court properly exercised personal jurisdiction over Quackenbush in this case.

### JURY DEMAND AND COUNTERCLAIM

Quackenbush asserts that the trial court erred in refusing to allow him to file a demand for jury trial and a counterclaim. We agree.

■ Generally, a defendant must serve an answer, which may include a counterclaim [Rule 13(a), N.D.R.Civ.P.], within 20 days after the service of the summons upon him. Rule 12(a), N.D.R.Civ.P. Although the defense of lack of personal jurisdiction may be asserted in the answer [*Beary v. West Publishing Co.*, 763 F.2d 66, 68 (2d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 231 (1985)], it may also be made by motion, and such motion "shall be made before pleading if a further pleading is permitted." Rule 12(b), N.D.R.Civ.P. When a motion to dismiss is made before pleading, as was done here, the time limits for filing an answer and counterclaim are altered. Rule 12(a) provides that "[t]he service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action; ..." A party is also allowed to demand a trial by jury of any issue triable of right by jury by serving upon the other parties a demand in writing "at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue." Rule 38(b), N.D.R. Civ.P.

■ In this case, the trial court did not deny Quackenbush's motion to dismiss until August 17, 1987. Under the clear terms of Rule 12(a), Quackenbush was entitled to serve his answer and counterclaim within 10 days after he received notice of the court's action. *See Jones v. Bales*, 58 F.R. D. 453, 456 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5th Cir.1973); *United States v. Chelsea Towers, Inc.*, 295 F.Supp. 1242, 1249 (D.N.J.1967); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 286 F.Supp. 62, 64 (N.D.Ill.1968). Furthermore, under Rule 38(b), Quackenbush was also entitled to demand a trial by jury on United's action not later than 10 days after the service of his answer and counterclaim. *See Dasho v. Susquehanna Corporation*, 461 F.2d 11, 22 (7th Cir.), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2498, 33 L.Ed.2d 336 (1972). The trial court, in its order denying the motion to dismiss, had no discretionary authority to refuse to allow Quackenbush the right to demand a jury trial and file a counterclaim when, under the Rules, the time had not expired for Quackenbush to exercise those rights. *See Daley by Daley v. American Family Mutual Ins.*, 355 N.W.2d 812, 815 (N.D.1984).[1]

Although United asserts that Quackenbush's special appearance at some point in the proceedings turned into a general appearance which made the jury demand and counterclaim untimely, we find this argument unpersuasive. None of Quackenbush's actions in this case can be construed as constituting a voluntary general appearance. We conclude that the trial court's refusal to allow Quackenbush to demand a jury trial and file a counterclaim was erroneous and requires reversal of the judgment on the merits.

Accordingly, we affirm the judgment insofar as it holds that the court had person-

---

1. This is not a case in which the trial court refused to allow Quackenbush to file a counterclaim and demand a jury trial as a sanction under Rules 16 or 37, N.D.R.Civ.P. *Compare Gohner v. Zundel*, 411 N.W.2d 75 (N.D.1987).

al jurisdiction over Quackenbush; reverse the judgment on the merits; and remand for further proceedings in which Quackenbush will be allowed to file an answer and counterclaim and demand a jury trial under the time requirements provided in the Rules.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

NDRCivP 40(b)(1) requires that the certificate of readiness certify, "to the best knowledge and belief of *the filing attorney*," (my emphasis), "(C) That all pretrial motions have been disposed of," among other things. I am puzzled how counsel for United in this case could have filed a "certificate of readiness which stated that all pretrial motions have been disposed of," as summarized in Chief Justice Erickstad's opinion for this court. Quackenbush's motion to dismiss for lack of personal jurisdiction was pending. Without disposition of that motion before further permitted pleadings, it is difficult to understand how counsel could also certify "[t]hat issues are joined and the case in all respects is ready for trial," as NDRCivP 40(b)(1)(A) requires. These inaccurate certifications may have misled this trial court into its erroneous ruling on Quackenbush's rights to file a demand for a jury and to file a counterclaim.